CASE 65—EQUITY—NOVEMBER 8, 1883.

# Spalding v. Paine's adm'r.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A mortgage made by the owner of certain shares of stock in the Louisville Transfer Company to secure a creditor on the payment of money is not a recordable instrument within the General Statutes, chapter 24.
2. Subsequent purchases of the stock are not charged with notice, because the paper is carried to record.
3. A share of stock in the corporation is a *chose in action*. The certificates of stock are in the pocket of the owner, and go with him

without any means on the part of those with whom he deals of knowing whether it is pledged or not. The transfer of the stock to a purchaser upon the books of the company invests him with the title as against the apparent mortgagor.

BARNETT, NOBLE & BARNETT FOR APPELLANT.

1. The capital stock in a corporation, and every other species of property that can be sold, can be mortgaged. (Jones on Mortgages, Personal Property, 94; Field on Corporations, sec. 110; 3 Paige, 361; Pendell v. Grooms, 18 B. Mon., 505; Copeland v. Copeland, 7 Bush, 350.)

2. In Price v. Price, 6 Dana, 107, this court held that such stock was real estate. (2 Ves., 651; 2 Conn., 251; 5 Bush, 457; Jones on Mortgages, sec., 352; 1 Peters, 386; 2 Dana, 204; 3 Cowen, 166; 4 *Ib.*, 467; 2 N. H., 16; 16 Mass., 277; 2 Pick., 610; 5 N. H., 547.)

W. O. & J. L. DODD FOR APPELLEE.

1. The mortgage of the stock in controversy is not required to be recorded by the Gen. Statutes, chapter 24. The certificate of stock is simply a chose in action following the person of the owner.

2. If there be no statute requiring a record of such mortgages, then no notice can be charged upon appellee, and his title by virtue of his purchase and the transfer to him upon the books of the company, is perfect. (Gen. Stat., secs. 9 and 10, chap. 24, p. 256; 1 R. I., 173; Angell & Ames on Corp., secs. 557, 560; Hutchins v. State Bank, 12 Met., 421; 9 Yerg., 490; 3 Kern., 627; 9 John., 99; 10 Mass., 487; 17 Mass., 243; 95 U. S., 687; Bank U. S. v. Huth., 4 B. Mon., 449; Van Meter v. McFaddin, 8 B. Mon., 442; Johnson v. City of Lexington, 14 B. Mon., 660; City of Covington v. Powell, 2 Met., 228; City of Louisville v. Henning & Speed, 1 Bush, 382; Mullen v. Engelen, 12 Bush, 443; Jones on Chattel Mortgages, sec. 278; N. J. Eq., 403; 60 Ala., 233; 11 Wall., 369; 3 How., 513; Oldham v. Jones, 5 B. Mon., 466; Hewitt v. Sturdevant, 8 B. Mon., 464; 3 Lea, 1; Cherry v. Frost., Am. Law. Reg., January, 1882; Bank of Ky. v. Schuylkill Bank, 1 Pars. Eq., 248.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Fontain, owning 180 shares of the capital stock in the Louisville Transfer Company, and being desirous of raising money upon it, obtained a loan from the appellant, Daniel Spalding, of $6,000, and in order to secure Spalding, executed to him a mortgage on this 180 shares of stock, and had it recorded in the clerk's office of the Jefferson county

court, the county in which the property of the corporation was and now is, and where its chief office is located. After the execution of the mortgage and its record, Fontain sold this stock to E. H. Paine, delivering to him the certificates, and having the stock transferred to him on the books of the company.

This was all done without the knowledge of Spalding, and when he ascertained the sale had been made, this petition in equity was instituted, in which the insolvency of Fontain is alleged, and that his (Spalding's) security will be lost, unless the stock, or the right to the stock, is re-transferred to Fontain on the books of the company; that Paine had constructive notice of his mortgage, and must hold it subordinate to his rights as mortgagee. It is further alleged that the transfer was fraudulently made, and that Fontain had disposed of the proceeds. A demurrer was entered by the appellee to the petition, and sustained, and of this the appellant Spalding complains. It was agreed upon the hearing "that Paine purchased the stock in controversy at its fair cash value, and without actual notice of the mortgage to appellant."

No charge of actual notice to Spalding was made by the appellant, and, in fact, it is conceded that the only notice the latter had was such as the law gave by reason of the mortgage of record in the Jefferson county court. The only question involved in the case is, was such a mortgage recordable, so as to affect creditors and purchasers; for if recordable, the appellee had constructive notice of appellant's claim.

Section 10 of chapter 24, General Statutes, provides: "No deed of trust, or mortgage conveying a legal or equitable title to real or *personal estate*, shall be valid against a

purchaser for a valuable consideration without notice thereof, or against creditors, until such deed shall be acknowledged or proved according to law, and lodged for record."

Section 9 of the same chapter provides: "All deeds and mortgages, and other instruments of writing which are required by law to be recorded to be effectual against purchasers without notice, or creditors, shall be recorded in the clerk's office of the court of the county in which the property conveyed, or the greater part thereof, shall be," &c.

The Louisville Transfer Company was incorporated by the legislature of the state, and the title to all the property is in the name of the corporation; that is, the title is vested in the corporation, and not in the individual stockholder.

A stockholder has no power to dispose of the property of the corporation, and if authorized by the act creating it to dispose of the property belonging to it, it must necessarily be in the name of the corporation. It is true the legislative grant will control the manner of disposing of the corporate estate, as well as the stock of the individual members, and we find nothing in this case permitting the disposition of the property of the corporate body, or the stock of a member of the corporation, in any other manner than ordinarily pertains to this character of incorporations. It is not pretended that anything in the charter of the Transfer Company authorizes the stockholder to dispose of its property, and therefore the appellant acquired no title whatever to the corporate property by reason of his mortgage.

Did he acquire any right to the shares of stock as against the appellee? Shares, says Angell & Ames on Corporations, are merely evidences of property—the right to a por-

tion of the surplus profits made by the corporation out of its capital stock. (Sections 560, 567.)

The certificate represents the interest the stockholders may be entitled to in the dividends of the corporation, but the legal right to the entire capital stock is vested in the corporation. Justice Shaw, in the case of Hutchins v. the State Bank, 12 Met., said that a share in a bank was in the nature of a chose in action. It is certain that such evidence of the right of a share-holder may be transferred by indorsement; and the actual delivery, by pledge or otherwise, for money loaned, would pass to the transferree the right, as against creditors and purchasers, in the absence of any provision in the charter prohibiting the transfer. In this particular there is but little, if any, difference of such evidences of right in the owner of stock and a chose in action, and while we must assume that the transfer to the appellee was made as is usual in such cases, by a delivery of the certificates of stock to him, and its transfer in his name on the books of the corporation—and, in fact, it is so admitted—we cannot infer that the power was given the stockholder to mortgage the corporate property, or his stock in the corporation, to secure his debts. It is not insisted in this case, either by way of argument or in the pleadings, that any special provision in the act of incorporation authorized the mortgage to be given upon the stock, while it is conceded that appellee has the stock by transfer from the real owner in the manner provided by the charter. There was no delivery of the certificates of stock by Fontain to appellant, but Fontain retained his certificates, and afterwards sold and delivered them to the appellee, without notice of the mortgage, for a valuable consideration. Charters generally provide the manner in which stocks of cor--

porations are to be transferred; but in this case we are not enlightened on the subject, except from the concession made as to the manner in which appellee acquired title.

Counsel for the appellant refers to the cases of Price v. Price's heirs, 6 Dana, and Copeland v. Copeland, 7 Bush, and the elementary authorities, as well as reported cases recognizing the doctrine that "in general any property which is capable of absolute sale may be mortgaged," as controlling the decision of this case. This court held in the cases cited that the perpetual right of way owned by railroad companies, with the wooden and iron fixtures, should be regarded as immovable, and therefore classified as real estate, and as the stockholders held the beneficial interest, the stock could be regarded in no other light than as real estate. We perceive no analogy between the cases and the one before us, except in the declaration that the corporation held as the trustee for the stockholder.

By an act of the legislature subsequently passed, and approved March 22d, 1871, it was declared that the capital stock of all railroad companies incorporated by the laws of the state shall hereafter be personal property; and while this enactment (if still in force) cannot affect the question here, it was necessarily intended to obviate the trouble and inconvenience originating from the ruling of the court in those cases, and we perceive no reason for applying the doctrine in reference to property or the right of property in railroads to the stock of all corporations, nor do we adjudge that stock in railroad companies can be mortgaged so as to affect purchasers without notice, as such a question is not presented in this case.

In the case of Field v. Montmalin, reported in 5th Bush, the issue presented was, whether the stock of the debtor in

a corporation could be attached or garnisheed for the payment of his debts, and the court held that it could be done; nor was the word *property*, with reference to the stock, used in any other light.

As between the parties to the mortgage, we have no doubt that it could be enforced; but the question involved here is, can it be enforced against an innocent purchaser?

In Arnold v. Ruggles, 1st Rhode Island, the court said: "We decide that the shares are personal property, but of what kind? Call them personal chattels if you will, yet chattels personal are of two kinds—chattels in possession and chattels technically, choses in action. Does the term share denote a thing in possession, or does it denote the mere right to a thing not in possession, but in action? We have shown that a right to a vote as a member of the corporation, and a right to the dividend of the profits, make all the beneficial interest that is called a share. But these rights subsist only in law or contract; all dividends save one must exist in the future: a chose not in possession; a thing subject to be demanded; money payable at a future day." (See Denton v. Livingston, 9th John; Union Bank of Tennessee v. The State, 9th Yerger.)

This court has several times held that the mortgage of a chose in action is not within the statute requiring mortgages of real and personal property to be recorded.

In the Bank of the U. S. v. Huth, 4 B. Monroe, this court said: "Real and personal estate in possession may have a situs or local position, and may be located in a certain place or county; but a chose in action or a debt is not a corpus. It cannot properly lie in any county, and the statutes are therefore inapplicable to such property or interest, and cannot be understood to apply to or embrace it."

Spalding v. Paine's adm'r.

(See also the cases of Vanmeter v. McFaddin, 8 B. Mon.; Johnson v. City of Lexington, 14 B. M. ; City of Covington v. Powell, 2 Met.; Mullen v. Engelen, 12 Bush.)

These certificates of stock are in the pockets of the owner, and go with him where he may happen to locate, as choses in action, or evidence of his right, without any means on the part of those with whom he proposes to deal on the faith of such a security of ascertaining whether or not this stock is in pledge or mortgage to others.   He finds the name of the owner on the books of the company as a subscriber of paid-up stock, amounting to 180 shares, with the certificates in his possession, pays for these certificates their full value, and has the transfer to him made on the books of the company, thereby obtaining a perfect title. What other inquiry is he to make, so as to make his investment certain and secure?   Where is he to look, in order to ascertain whether or not this stock has been mortgaged? The chief office of the company may be at one place to-day and at another to-morrow.   The owner may have no fixed or permanent abode, and with his notes in one pocket and certificates of stock in the other—the one evidencing the extent of his interest in the stock of the corporation, the other his right to money owing him by his debtor, we are asked to say that the mortgage is effectual as to the one and inoperative as to the other.

This is not a contest between equities.   The legal right and the equity is with the appellee, and we cannot well see how a purchaser for value, who has the evidences of title by a proper transfer, is to be disturbed in his right.   Under the general law of the state authorizing the formation of corporations, it is expressly provided that "transfers of stock shall not be valid, except as between the parties,

until the same are regularly entered on the books of the company, so as to show the name of the person by whom and to whom the transfer is made." We infer,, however, that this corporate company was not organized under the general law, but will also assume that the mode of transfer is as usual in like corporations, by a transfer on the books of the company.

It is argued that the mortgage is not void as to the purchaser, although possession did not accompany its execution and delivery. We can only answer the suggestion by saying that the writing is not a recordable instrument, and the purchaser parting with his money in good faith, and obtaining the possession and title, must hold as against the appellant. We know of no case in this state where a mortgage of such stocks has been held to invest the mortgagee with an equity as against a subsequent purchaser without notice. What may be the course of descent, or the mode of distribution, where the stock held is in a corporation, where the corporate property is regarded as realty, is also a question not before us, and our attention has been called alone, as there is no other issue, to the effect of the mortgage made by Fontain to the appellant; and whether the stock is in the nature of a chose in action, or evidences the extent of the interest of the stockholder in the corporation, is immaterial. The title to all the corporate property is in the corporation, and that which is not tangible and follows the owner as a chose in action, must be held as not within the statute, authorizing the recording of written instruments, conveying a legal or equitable title to real or personal estate. We find no precedent in this state sustaining the views presented by the appellant, and, as suggested by counsel for the appellee, much of the business of the country is conducted on the

faith of the pledge of such stock as collaterals, and to adjudge that the holder of the stock, by transfer on the books of the corporation, or by indorsement and delivery by the owner, is subordinate in his claim to the mortgage upon the doctrine of constructive notice, would paralyze trade, and open a wide field for the fraudulent disposition of such valuable interests at the expense of honest and confiding purchasers.

Judgment affirmed.