Chappell, &c., v. Chappell, &c.

CASE 89.—ACTION BY SALLIE CHAPPELL AND OTHERS AGAINST HENRY CHAPPELL AND OTHERS TO SET ASIDE THE SALE OF CERTAIN SHARES OF STOCK.—February 22.

## Chappell, &c., v. Chappell, &c.

Appeal from Leslie Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for defendants. Plaintiffs appeal. Affirmed.

1. Executors and Administrators—Dividend-Paying Securities— Sale.—Ky. Stats., 1903, sec. 4707, declares that no administrator or executor shall sell any dividend-paying securities which the decedent owned at his death until so ordered by the court. Held, that such section applied only to stocks, that

were actually paying dividends, and not to stocks which "may" at some time pay dividends.

2. Same.—Ky. Stats., 1903, sec. 4707, prohibiting an executor or administrator from selling dividend-paying securities without an order of the court, by necessary implication authorizes an executor or administrator to sell non-dividend paying stocks as personal property.

3. Same—Sales—Vacation—Fraud.—In a proceeding to set aside an administrator's sale of certain stock belonging to his intestate for fraud, it was necessary that the petition allege the facts constituting the fraud.

4. Same—Evidence.—In a suit to set aside an administrator's sale of certain stock for fraud, evidence held to sustain a finding that the sale was not fraudulent in fact.

H. C. EVERSOLE, W. S. MOBERLY and T. G. LEWIS, attorneys for appellants.

## POINTS AND AUTHORITIES.

1. "Sales by administrator or executor are void, if made without order of court, or in any manner not authorized by law; and property so sold, may be recovered by the distributees or legatees from the parties holding it." (Ware v. Houghton, 93 Am. Dec., 258.)

2. "Sales by administrators must be made in a manner provided by law; and if made at a place or time otner than those prescribed by the statutes or decree, they are not only irregular but void." (Triplett v. Mizs, 94 Am. Dec., 313.)

3. "Void administration sale is not rendered valid against heirs, because they receive the benefit of the proceeds, particularly so, when they are minors." (Valle v. Fleming, 61 Am. Dec., 566.)

4. "Executor has no right to borrow money for the estate of his testator, unless expressly authorized by the will." (Lucich v. Medin, 93 Am. Dec., 576.)

5. We feel that the first section of our argument has been overwhelmingly sustained, and our position therein outlined established by the authorities above quoted, and the various extracts therefrom copied into this brief.

## AUTHORITIES RELIED ON.

Kentucky Statutes, 4707; "Cyc.," vol. 18, p. 356; "Cyc.," vol. 18, p. 251 and note 19, p. 252; Citizens Railway Co. v. Robbins, 12 L. R. A., 501, 502; U. S. Sup. Ct. Rep., 34-37 (10 Peters) Ventrees,

Chappell, &c., v. Chappell, &c.

et al., v. Smith, 387 (173); Emor v. James, 4 Mum., 194; 7 Mass., 488; U. S. Cir. Ct. of Appeals, 53 L. R. A., 684 687, on the liability of corporations for transferring stock, on its books without full authority; Ware v. Houghton, 93 Am. Dec., 258; Triplett v. Mize, 94 Am. Dec., 313; Valle v. Fleming, 61 Am. Dec., 566; Lucuch v. Medin, 93 Am. Dec., 376; Am. and Eng. Enc. of Law, 1st Ed., pp. 615, 616; 4 Johns Ch. 368; 6 Cond. Rep., 387; Com. Dig. Tit. Market E.; 1 Johns Rep., 478; St. Romes v. Levee Cotton Press Co., U. S. Sup. Ct. Rep., 290; Western Union Tel. Co v. Davenport, 97 U. S., 369 (24, 1047); Loring v. Salisbury Mills, 125 Mass., 138; Pratt v. Taunton Copper Mfg. Co., 123 Mass., 110; Pennsylvania R. R. Co.'s Appeal, 86 Pa., 80; Loring v. Frue, 104 U. S., 223 (26, 713); Salisbury Mills v. Townsend, 109 Mass., 115; 31 La. Am., 224, 229; Civil Code, 474 (466); Civil Code, 3506 (3472); Civil Code, 3536, (3501), 3544, (3508); Case v. Citizens' Bank, 100 U. S. 446 (25, 695); "Cyc.," vol. 18, p. 763; Wyman v. Campbell, 31 Am. Dec., 691; 52 Am. Dec., 399, Worthy v. Johnson; Williamson v. Williamson, 41 Am. Dec., 636; Hamilton v. Pleasants, 98 Am. Dec., 551; "Cyc.," vol. 18, p. 358; Am. Dig. (Cen. Ed.) vol. 22, sec. 634; Donaldson v. Hull, 7 Mart. (U. S.) 113; Am. Dig. (Cen. Ed.) vol. 22, p. 995; Herron v. Marshall, 24 Tenn., 443; 42 Am. Dec., 444; Am. Dig., vol. 18, sec. 649; Trimble's Executrix v. Lubus, 94 Ky., 304; Am. Dig., vol. 22; French v. Curier, 47 N. H., 88; Pratt v. Taunton Copper Co. (123 Mass., 110) 25 Am. Rep., 37; Stevenson Heirs v. McReary, 51 Am. Dec., 102; Geyser-Marion Gold Mining Co. v. Charles B. Stark, 53 L R. A., 684; Lowry v. Commercial & Farmers' Bank, Fed. Cas. No. 8581; Albert v. Savings Bank of Baltimore, 1 Md Ch., 407; City of Baltimore v. Normen, 4 Md., 352; Marbury v. E. H. Len, 20 Am. St. Rep., 467; Weymer v. Second National Bank, 57 Ind., 198; Saltus and Saltus v. Everett, Am. Dec., vol. 32, p. 540; Am. Dec., vol. 32, p. 551; Am. Dec., vol. 32, p. 555; Williamson v. Nerle Am. Dec., vol. 25, pp. 65, 616; Brown v. The Howard Fire Insurance Co., Am. Rep., vol. 20, p. 90.

E. S. JOUETT, W. M. BECKNER, D. B. LOGAN and J. H. JEFFRIES, attorneys for appellees.

SYNOPSIS OF POINTS AND AUTHORITIES.

A decree of court to sell the stock in controversy was not necessary, as it was not dividend-paying stock.

1. Ordinarily an administrator has full power to sell stock as other personalty. (Cook on Corporations, sections 329, 393; Kentucky Statutes, section 3853.)

2. Section 4707 of Kentucky Statutes, which requires a decree of

court for a personal representative to sell "dividend-paying stocks, bonds and other security," refers to stocks, etc., that are paying dividends, and not, as appellants claim, to the stock of commercial corporations in general in contrast with eleemosynary corporations.

(a) Interests in eleemosynary corporations are not subjects of barter and sale.

(b) "Stock" is not an incident of eleemosynary corporations; it represents money value, and in fact, as well as by the express terms of our statute, applies solely to corporations that are run for a profit. This is also shown by its being linked with "bonds and other security." (Kentucky Statutes, sections 879, 883.)

(c) Section 4706 uses in the same sense the terms "dividend-paying securities," showing the same division of securities (which are necessarily commercial only) into those which produce an income and those which do not.

(d) Section 4707 itself recognizes this classification, when in its earlier part it gives to trustees a general power to sell "stocks, bonds, etc., and then later restricts that power in the case of one kind of trustee—a personal representative—selling one kind of stocks, bonds and other security—those that are dividend-paying."

(e) This court in Trimbles' Adm'r v. Lebus, etc., 94 Ky., 304, expressly held that section 4707 was "intended to apply to and control exercise by an administrator or executor of their general authority to sell and dispose of stocks and bonds paying dividends," and hence held that the statute did not apply to stock in a bank which had paid no dividends for two years.

3. The company, the sale of whose stock is in controversy, was organized in 1890 with a capital stock of one million dollars over two-thirds of which was water. On September 28, 1896, when the sale was made, it owed nearly $400,000.00. It had never paid a dividend prior to the sale and never did pay one, and could not have legally done so, until six years after the sale, when it finally wiped out its debt and then for the first time in twelve years of its existence made a return to its stockholders—and this was in the nature of a liquidation dividend. (2 Thompson on Corporations, sections 2126, 2152; Cook on Corporations, section 546.)

4. Absolutely no proof was offered by appellant to sustain their charge that the sale was fraudulent. Its good faith and fairness were conclusively established.

5. If appellants had successfully attacked the sale they could have had no relief in this action.

(a) No relief was asked against the administrator.

(b) The purchaser was not before the court.

(c) His transferees would not have been liable. (1 Cook, 731; 2 Thompson, section 1368.)

(d) The company in a case like this would not have been
liable for registering the transfer. (2 Thompson, sections 2529,
2531, 2534.)

6. Stock in a corporation is not realty, as claimed by appel-
lants, but is personal property in the nature of a chose in action,
which passes to the personal representative. (Spalding v. Payne,
81 Ky., 416; 1 Cook, 44.)


Opinion of the Court by Judge Hobson—
Affirming.


John C. Chappell owned at his death in February,
1892, 6,100 shares of stock, of the par value of $10
each, in the Asher Lumber Company. Henry Chap-
pell, his brother, qualified as his administrator. The
personal estate failed to pay the debts, and his admin-
istrator borrowed $2,000 for this purpose of G. M.
Asher, pledging to Asher the stock referred to to
secure the money. In the year 1896 Asher brought a
suit on the note and sought the enforcement of the
lien. The administrator then, on September 28, 1896,
sold the stock at public outcry, after giving adequate
notice of the sale. It brought $2,501, which paid the
debt to Asher, and left a balance in the hands of the
administrator. In the year 1902 this suit was brought
by John Chappell's two infant children, by their
statutory guardian, to set aside the sale of the stock.
The case was voluminously prepared, and on final
hearing the circuit court dismissed the petition.
From this judgment the plaintiffs appeal.

It is insisted for the plaintiffs that the administra-
tor was without authority to sell the stock, and that
no title passed by the sale. Section 4707, Ky. Stats.,
1903, provides: "All persons or corporations hold-
ing stocks, bonds or other securities, in a fiduciary
capacity for loan or investment, shall have power to
sell and transfer the same whenever in the judgment

of such fiduciary such sale will benefit the trust estate, and reinvest the proceeds as in section 4706 of this chapter authorized; but no administrator or executor shall sell any dividend-paying stocks, bonds or other security which the decedent owned at his death, until so ordered by a court of general equity jurisdiction in the county where letters of administration was granted or the will recorded.'' It is conceded in the record that the stock in question had not paid any dividends since the organization of the company about the year 1889, and that at the time the stock was sold the company had been for several years losing money, and was heavily in debt. But it is insisted that the words ''dividend-paying stocks'' refer to stocks upon which dividends may be paid, and not to those that are actually earning dividends. If the construction urged by the plaintiffs is adopted, then the personal representative could only sell stocks in corporations organized for charitable purposes. But that is not the character of stocks that the Legislature had in mind. . The language of the statute— ''dividend-paying stocks, bonds or other security''— shows that the Legislature had in mind securities in which money is invested. In the preceding section authorizing such investments the fiduciaries are authorized to invest ''in such other interest-bearing or dividend-paying securities as are regarded,'' etc. The meaning of section 4707 is that where stocks are paying dividends, and are thus interest-bearing, the executor must not sell them until ordered by a court of general equity jurisdiction. If the statute does not mean this, then it would be practically valueless, for there would be no case worth mentioning when an executor could sell stocks without an order of court. This construction of the statute was adopted in Trimble's Ex'r v. Lebus, 94 Ky., 304, 15 Ky. Law

Rep., 85, 22 S. W., 329, and we see no reason for departing from the rule indicated in that case. It was held in Price v. Price's Heirs, 36 Ky., 107, and in Copeland v. Copeland, 70 Ky., 349, that stock in two railroad companies incorporated under the laws of this State were real property and not personalty. But these decisions rested largely on the prhaseology of the acts under which the companies were incorporated, and the Legislature thereafter passed an act declaring all railroad stocks personal property. The entire trend of modern authority is to the effect that stock in a corporation is personal property (1 Cook on Corporation, 41; 10 Cyc. 366), and this rule was recognized by this court in Spalding v. Paine's Adm'r, 81 Ky., 416, 5 Ky. Law Rep., 391. Besides, the statute that no administrator or executor shall sell any dividend-paying stocks which the decedent owned at his death by necessary implication authorizes the administrator or executor to sell stocks that are not dividend-paying, and thus recognizes such stocks as personal property. We therefore conclude that the stock was personal property, and that the administrator had authority to sell it.

It is also insisted that the sale was fraudulent, and was procured by fraud. There is no doubt that the administrator acted honestly and in the exercise of his best judgment in selling the stock, under the direction and counsel of a skillful attorney of high character. But it is insisted that the administrator and his attorney were imposed upon. The facts of the matter are these: The two Ashers, Cross, Chappell, and W. M. Beckner organized the Asher Lumber Company in the year 1889. It was a Michigan corporation. The capital stock was placed at 100,000 shares of $10 each. About the time they formed the company, and before they had completed

the organization, the two Ashers sold out their interest in the company to Brabb and Randall for $200,000. It was stipulated in the trade that Beckner and Chappell might go out on the same terms for their interests, but they decided to stay in. This occurred in 1889. Brabb took Burt in—just at what time does not positively appear, but perhaps about 1890. Thus matters stood until the death of Chappell in 1892. In the trade when the Ashers went out Brabb and Randall assumed all the obligations of the company; that is, they took the stock of the two Ashers, and agreed that the company would pay all of its obligations. Just how much the company owed at this time does not definitely appear, but proof is that, when the stock was sold in 1896, the debts of the company amounted to $380,000. At that time a great panic had swept over the country, timber lands had greatly depreciated in value, and there was little market for such property. So far had this gone that fears were entertained that the property of the company would not pay its debts. This was the reason that the administrator made the sale when he did, and it was for this reason that Asher brought suit upon his note. It does not appear that Asher had any interest in it. When Burt learned that the stock was to be sold, he wired his agent to buy it for him as cheap as he could, not exceeding five cents. The agent attended the sale, and bought it for about four cents. Burt had no hand in bringing about the sale, and had nothing to do with it, except to order his agent to bid for him after he learned the sale was to be had. He testifies that he only bid in the stock to prevent its falling into unfriendly hands, and in this his testimony is confirmed. There was therefore no fraud directly in the sale of the stock.

But it is insisted that the sale was brought about

by fraud, in this: That the administrator was induced to sell by the fact that he was made to believe that the debts of the concern amounted to $380,000, when, in fact, the debts were only $180,000, and that, if the true condition of the concern had been disclosed, the stock would have been rated much higher, and would not have been sold at such a sacrifice. It is insisted that the $200,000 that was paid to the Ashers for their interest in the concern was paid to them in the notes of the corporation, and that this $200,000 went to make up the $380,000 of debt above referred to. It is manifest that if the notes of the corporation were used to buy the stock of the Ashers, and this money became the debt of the corporation, then the stock of the Ashers belonged to the corporation, and not to Brabb, Randall, or Burt.

It is insisted that the testimony of G. M. Asher shows that the $200,000 paid them went to swell the debts of the corporation. We have read and re-read with care his deposition, and we do not clearly understand just what he does mean to say. On the other hand, Burt says that the entire debt of $380,000, except $25,000, was for borrowed money. The allegations of the petition do not assail the transaction upon this ground. The rule is that in a petition to set aside a contract on the ground of fraud the facts constituting the fraud must be alleged. In the petition in this case no such facts are charged, and this may account for the unsatisfactory condition of the proof on the subject, as neither parties nor counsel had their attention directed to it. But we do not rest our judgment here. We rest it upon the fact that Beckner and Chappell were two of the original stockholders and organizers of the company; that they stayed in after the Ashers went out; that Chappell lived something over two years after the Ashers went out, and after

the transaction in question was had. In the absence of any evidence to the contrary, it must be presumed that the transaction of the corporation was fair and right, and was satisfactory to him and Beckner, for there was never any complaint in this matter, so far as the record shows, until the case reached this court on appeal. The transaction with the Ashers occurred in 1889. It occurred between them and Brabb and Randall. It took place something like seven years before the stock in question was sold, and the sale of the stock in question could not have been contemplated in that transaction. There is not in the record any proof that Burt made any representations to anybody as to the condition of the company, or as to what the stock was worth, or in any way misled any of the parties. In a case of this sort to set aside a sale the proof of fraud must be clear. The chancellor will not upon obscure evidence convict a party of fraud, and, where the evidence is doubtful, in a case like this, the judgment of the chancellor will not be disturbed on the facts.

Judgment affirmed.

Petition for rehearing by appellants overruled.