THE UNION NATIONAL BANK OF WILMINGTON, a corporation of the United States of America,

*vs.*

TOPKIS BROTHERS COMPANY, a corporation of the State of Delaware,

Defendant,

and EPHRIAM J. FRANKEL and DAVID SAPP,
Intervening Defendants.

*New Castle, July* 28, 1938.

*William S. Potter*, of the firm of Ward & Gray, and *Daniel F. Wolcott*, for complainant.

*Hugh M. Morris* and *S. Samuel Arsht*, and *Sylvan H. Hirsch*, of the firm of Sundheim, Folz & Sundheim, of Philadelphia, Pa., for defendant Topkis Bros. Company, and for intervenors, Sapp and Frankel.

THE CHANCELLOR: The agreement between Topkis and Sapp and Frankel was in the form of a sale of stock with a repurchase clause. The complainant insists that such an agreement is in contemplation of law a chattel mortgage, and that as it was never recorded as required by *Section 3333* of the *Revised Code* 1935, it was of no effect as a lien. The complainant further takes the position that if the so-called chattel mortgage was not a lien, then the lien of the attachment, though subsequent in point of time to the $1750.00 loan transaction, is superior in right thereto.

The intervenors answer by saying first that the agreement was not a chattel mortgage, because it is not to be construed on its face as such; second, even if it be a lien, it is not such by way of chattel mortgage within the meaning of the statute requiring such mortgages to be recorded, because shares of corporate stock are not the type of personal property which the act contemplates; and third, even if it was a chattel mortgage and not recorded as required so as to become a legal lien, the complainant is not entitled in opposition thereto to claim to be a subsequent purchaser for value without notice of Sapp and Frankel's rights.

Was the agreement of sale and repurchase a chattel mortgage? This question is at the heart of the complainant's case as presented on its brief.

In 1 *Jones, Chattel Mortgages and Conditional Sales,* § 190, it is indicated that the object sought to be served by statutes requiring the recordation of chattel mortgages is to substitute a record or filing of the mortgage in place of a delivery of possession of the mortgaged property, inasmuch as the mortgagee is to retain the possession which in the law of chattels is such an important evidence of

ownership. Accordingly the author proceeds to state in *Section* 278 of his work that such statutes "apply only to goods and chattels capable of delivery and not to defeasible or conditional assignments of choses in action. It is not necessary to the validity of such assignments that they be recorded."

Now a share of stock in an incorporated company, though it is "personal property," using the phrase of § 3333, *Revised Code* 1935, dealing with the recording of chattel mortgages, is certainly not property that is tangible. In *Spoturno v. Woods,* 8 *W. W. Harr.* (38 *Del.*) 378, 192 *A.* 689, the Supreme Court of this State spoke of corporate stock as being intangible property and pointed out that at common law it could not be levied upon or attached. This was because of its ideal nature and as a consequence thereof of its incapability of manucaption. It is only because of some statutory substitute for actual seizure and delivery that so-called levies upon shares of stock and their sale on execution are possible.

In *Marsh v. Woodbury,* 42 *Mass.* (1 *Metc.*) 436; *Heermans v. Blakeslee,* 97 *Wash.* 647, 167 *P.* 128, it was held that choses in action are not within the statute dealing with the recording of chattel mortgages. And in *Williamson v. N. J. Southern R. R. Co.,* 26 *N. J. Eq.* 398, it was held that shares of stock are not such goods and chattels as were within the contemplation of the chattel mortgage statute. In Delaware, the statute (*Revised Code* 1935, § 3333) does not use the phrase "goods and chattels." Its phrase is "personal property." But as the rationale of the decisions which hold that shares of stock are not in the embrace of statutes requiring the recordation of chattel mortgages, is based on their intangible character, I conceive that the variation in the phraseology as between "goods and chattels" and "personal property" is of no moment. In Kentucky the statute appears to have dealt with the recording of mortgages upon real and personal property. There, where we find substantially

the same phrase, viz., "personal estate," as we find here, viz., "personal property," it was held that shares of stock, equally with choses in action, because they have no visible corpus and no fixed location, are not within the recording statute. *Spalding v. Paine's Adm'r.*, 81 *Ky.* 416, 422.

Of course a share of stock is personal property. So is a chose in action. If a share of stock is the proper subject of a chattel mortgage within the meaning of a recording statute applicable to "personal property," a chose in action would be equally so. The complainant, however, does not question the rule as to choses in action. The reasoning which underlies that rule is applicable to shares of stock.

The statute itself contains a provision which necessarily excludes so intangible and unlocated a piece of "personal property" as a share of stock from its contemplation; for it is to be noted that the mortgage is to be recorded "in each county where any of the mortgaged property is held." Now in what county can stock be said to be held? That stock of a Delaware corporation has its situs in the State is expressly declared by statute. But in what county is it held? Where the corporation is? But the corporation is not located in any particular county. Where the stockholder is? But he moves about. The statute makes it a misdemeanor for the mortgagor to remove the mortgaged property from the county where it was held when mortgaged, without notice to the mortgagee. Would the stock wander out of the county with its owner? If so a misdemeanor would be committed unless the mortgagee was previously notified of the owner's journey out of the county of recordation. Where the certificate is? But the certificate is not the share as has frequently been said by the courts of this State. Evidently the statute contemplates only visible, tangible property which has a defnitely ascertainable locus. It seems clear that the personal property referred to in the statute is personal property which is capable, in the language of the court in

*Williamson v. N. J. Southern R. R. Co., supra,* "of visible possession."

If the contention of the complainant be accepted to the effect that shares of stock are the subject of a lien under our chattel mortgage statute, the effect on commercial transactions that involve its transfer, pledge and sale is impossible of estimate. No one would risk a purchase of it or a loan on the faith of the registered owner's title, unless he had first searched all the chattel mortgage indices in the State to ascertain if a lien was of record against it. It is unreasonable to say that the statute was ever intended to cover personal property of so intangible and ideal a nature as shares of stock. The statute itself in its reference to the county "where any of the mortgage property is held," negatives the suggestion.

So that the complainant's case can gain no support from the contention that what Sapp and Frankel obtained by the sale and repurchase agreement with Topkis was a chattel mortgage that lost its legal lien through failure to have it recorded.

The complainant, by its attachment, acquired a legal right in the nature of a lien to look to the stock standing in Topkis' name for satisfaction of its judgment.

Before it acquired this right, the rights of Sapp and Frankel had arisen. Whether their rights were those of purchasers from Topkis or equitable lienors against him, they were prior in point of time to the complainant's attachment. "A prior equitable interest prevails over a later legal one, unless the latter can borrow a superior status from the absence of notice of the existence of the former, accompanied with the element of a valuable consideration or in lieu thereof perhaps with some other equitable incident." *Royal Ins. Co. v. Simon, et al.,* 20 *Del. Ch.* 297, 304, 174 *A.* 444, 447. As the attachment was on a judgment for a debt which was not cotemporaneous with the security of the

attachment and as the complainant parted with nothing on the faith of the attachment, the complainant cannot be regarded as a subsequent purchaser for value so as to outrank the rights of Sapp and Frankel, even though it was without notice of those rights. *Royal Ins. Co. v. Simon, et al., supra.*

If Sapp and Frankel were outright purchasers from Topkis, then their title is superior to that of the complainant, and that is the end of the case.

But if they were only equitable lienors under their agreement with Topkis, then the complainant would have the right to pay them the amount of their lien and take the stock. But the complainant has not by its bill tendered itself ready and willing to do that. Certainly it should not, in any event, be awarded a decree without repayment to Sapp and Frankel of the amount they advanced.

But conceding that the complainant could thus dispose of Sapp and Frankel as equitable lienors from Topkis, the complainant would have yet another hurdle to clear before it would be entitled to a decree in its favor. This consists in this—that the rights of the United States Fidelity and Guaranty Company were prior and superior not only to those of the complainant but as well of those of Sapp and Frankel. Now the United States Fidelity and Guaranty Company had a right to sell the stock in satisfaction of its loss. It did so. Apparently Topkis interposed no objection. Sapp and Frankel became the purchasers. Even if they derived no title as purchasers from Topkis but only as against him were equitable lienors, they certainly acquired the title of purchasers from the United States Fidelity and Guaranty Company which could pass a good title not only as against Topkis but as well against all subsequent persons who might claim under him. The complainant is such subsequent person.

It, therefore, follows that Sapp and Frankel are sup-

erior in right to the complainant in any case. It would be inequitable to award the stock to the complainant without its ever having reimbursed Sapp and Frankel for the $1,-750.00 paid by them to Topkis and the $5,281.65 paid by them to United States Fidelity and Guaranty Company. This is so even if the sums mentioned are to be regarded as liens only and not as purchase money. The complainant, however, has not expressed any willingness to make these reimbursements to the persons whose rights are prior. But I am of the opinion that Sapp and Frankel are not to be regarded as mere lienors. They are purchasers, if not by reason of the agreement with Topkis, certainly by reason of their transaction with United States Fidelity and Guaranty Company.

The bill should be dismissed. Decree accordingly.