In the Matter of **PAUL SCOTTON CONTRACTING CO., Inc., Bankrupt.**
**BK No. 68-60.**

United States District Court,
D. Delaware.
April 12, 1971.

Franklin S. Eyster, II, Richards, Layton & Finger, Wilmington, Del., Maurice A. Hartnett, III, Dover, Del., for petitioner, Farmers Bank of Del.

John G. Mulford, Theisen, Lank & Kelleher, Wilmington, Del., for bankrupt.

John Biggs, III, Biggs & Battalgia, Wilmington, Del., for trustee.

## OPINION

STAPLETON, District Judge.

This matter is before me on a petition for review of an order of the Referee in Bankruptcy. The following are the primary facts found by the Referee which seems to me to be relevant to the disposition of this matter. They, as well as the other primary facts found by the Referee, are amply supported by the record.

On August 18, 1966, Paul Scotton Contracting Co. Inc., ("Scotton") gave a chattel mortgage to the Farmers Bank of the State of Delaware ("Bank") to secure a loan in the amount of One Hundred Five Thousand Dollars ($105,-000.00). The chattel mortgage covered over seventy diverse pieces of equipment then owned by Scotton. The mortgage was duly recorded.[1]

Prior to April 18, 1968, Scotton decided to sell some, but not all, of the equipment covered by the chattel mortgage and, on that date, asked the Bank to release the lien on certain specified pieces of equipment. The Bank, on April 19, 1968, advised Scotton that it would honor this request, provided the Bank would receive the proceeds of the sale. At the Bank's request, Scotton submitted a form of a release to the Bank which was signed and subsequently delivered to the Recorder's office.

The caption of the release was "Release of Chattel Mortgage". A reading of the body of the release demonstrates that the release was only intended to release some, but not all, of the seventy pieces of equipment. The pieces which were to be released from the lien were listed and the instrument went on to state that it did not "limit, impair or affect the lien" of the chattel mortgage except with respect to the listed equipment.

The clerk at the Recorder's office was not familiar with partial releases. She took the caption to mean that the documents constituted a satisfaction of the chattel mortgage and a release of all liens arising thereunder and, in reliance on the caption, made the following entry in the chattel mortgage book on the right hand side of the appropriate page:

"Date: May 15, 1968
This lien has been
satisfied of record.
by Maurice N. Jarrell
Recorder"

In addition, the clerk signed the Recorder's name and entered a red "S" in the indices alongside Scotton's name. The release itself was kept by the Recorder.

On June 26, 1968, Scotton filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. In August of 1968, the satisfaction of record was discovered and the Recorder of Deeds was made aware that the intent of the release was not to satisfy the chattel mortgage. In October, 1968, the parties to this litigation participated in a joint auction at which the remaining equipment covered by the chattel mortgage was sold.

Subsequently, the Superior Court of Delaware was petitioned by the Recorder in January of 1969 to correct the error. That court, following a proceeding of which only the Recorder had notice and in which only he participated, ordered that the satisfaction be stricken.

The proceeds of the sale, $28,665.00, are claimed by the Trustee for the bene-

---

1. Two chattel mortgages were actually given by Scotton to the Bank, but the second was paid off and the disposition of the proceeds from the sale of the equipment covered by the second chattel mortgage is not currently at issue.

fit of all unsecured creditors and by the Bank. The Trustee appeals from the Referee's award of this fund to the Bank.

The Trustee maintains (1) that the Recorder's action on May 15, 1968, extinguished the Bank's lien, (2) that the Recorder's action resulted from the Bank's negligence and that a subsequent judgment creditor, a position which the Trustee holds by virtue of Section 70(c) of the Bankruptcy Act, should prevail over a mortgagee who negligently caused his lien to appear satisfied on the record, and (3) that the interest of the Bank after May 15 was at most an equitable lien which is voidable by the Trustee under Section 60 of the Bankruptcy Act.

█ While the position of a trustee as a creditor who has obtained a lien through judicial proceedings is established by the Bankruptcy Act, his priority as such, vis-a-vis other creditors, is determined by state law—in this case the law of Delaware. 4A Collier, Bankruptcy, § 70.49 (14th Ed. 1969). The applicable Delaware statutes [2] provide, in part, as follows:

### § 2305.   Priority of lien

"Any chattel mortgage executed pursuant to this chapter shall be a lien upon the property therein described, which lien shall be good and valid against and superior to all rights of subsequent creditors, subsequent purchasers, subsequent mortgagees and other subsequent lienors and encumbrancers, and all persons subsequently dealing with the mortgaged property or subsequently acquiring an interest therein from the time of filing of the mortgage, as provided in section 2308 of this title. * * * "

### § 2308.   Manner and effect of filing

"(a) Any chattel mortgage executed pursuant to this chapter may be filed in the office of the recorder for each county in which the chattels or any portion of the chattels are located at the time of filing the same, either by filing the original mortgage or by filing a true copy thereof duly certified by the recorder of the original county, and when so filed such chattel mortgage shall constitute a lien on the property described therein from the time of such filing which lien shall be good and valid as provided in this chapter for the full amount of indebtedness intended to be secured thereby. * * *

"(b) Any instrument affecting the lien of a chattel mortgage or its ownership may be filed in each office in which the chattel mortgage is filed, and from the date of filing thereof each such instrument shall be good and valid as against subsequent creditors, subsequent purchasers, subsequent mortgagees, other subsequent lienors and other persons subsequently dealing with the property or subsequently acquiring an interest therein. * * * "

### § 2312.   Manner and effect of satisfaction

"Any chattel mortgage executed pursuant to this chapter may be satisfied by an instrument in writing signed by the mortgagee or assignee, and upon presentation of such instrument to the recorder, the recorder shall file the same and note the fact of such satisfaction and the date thereof on the margin of the page of the book where the chattel mortgage is docketed, and when so noted such satisfaction shall fully and effectually release the lien of

---

2. Delaware's version of the Uniform Commercial Code became effective on June 30, 1967. Section 10–102(2) of that statute provides, however, that "transactions validly entered into before the effective date specified in Section 10–101 and the rights, duties and interest flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this title as though such repeal or amendment had not occurred." Under this provision, the law applicable to the current dispute is not the current Delaware law, but that which existed when the chattel mortgage was executed, delivered and recorded.

such mortgage. Any such chattel mortgage may be satisfied on the margin of the page where such chattel mortgage is docketed, which satisfaction shall be attested by the recorder. The satisfaction of a chattel mortgage shall be noted by the recorder on the line of the page on which the chattel mortgage is indexed."

The Trustee concedes, as he must, that the Bank's mortgage was properly recorded under Section 2308(a) and that, prior to May 15, 1968, it possessed a valid, legal lien with the priorities specified in Section 2305. He asserts, however, that the Bank's lien was discharged on that date since, as he paraphrases the statute, "when a satisfaction is placed on the margin of the page where a chattel mortgage is docketed, such satisfaction 'shall fully and effectively release the lien of such mortgage' ".

■ There are no Delaware cases construing Section 2312 in the context of an erroneous notation of satisfaction. The Referee, accordingly, was called upon to make a prediction as to what a Delaware court would do in a case of this kind. I agree with his conclusion that a Delaware court would not sustain the Trustee's contention. This conclusion is supported by the language of the statute, by practical considerations related to the statutory purpose and procedure, and by the weight of analogous case law from other jurisdictions.

The first sentence of Section 2312 provides that a chattel mortgage "may be satisfied by an instrument in writing signed by the mortgagee or assignee * * *." It then goes on to prescribe the

Recorder's duties when such a satisfaction piece is presented and the point at which the lien of the mortgage is released. While the statute does say that the Recorder, after filing the instrument, shall "note the fact of such satisfaction * * * and when so noted such satisfaction shall fully and effectually release the lien of such mortgage," it is apparent from the context that "such satisfaction" refers to the "instrument in writing signed by the mortgagee" and not the Recorder's record notation. Accordingly, with one exception not here relevant,[3] there can be no satisfaction or release in the absence of a properly executed satisfaction piece which effects the satisfaction.

■ It follows that the legal lien created under Section 2305 when the Bank recorded its chattel mortgage was not released by the Recorder's action on May 15, 1968. No duly executed instrument satisfying the mortgage was ever delivered to the Recorder. The document delivered demonstrated on its face that it was intended to release a portion of the equipment from the lien of the mortgage and cannot be construed as a satisfaction of those mortgages.[4]

■ This construction of the statute is consistent with its purpose and is required in order to make the statutory mechanics serve that purpose. At common law in Delaware, a mortgage of personalty with the possession retained by the mortgagor was not valid as against other creditors of the mortgagor. Jefferson v. Stuckert, 12 Del.Ch. 45, 104 A. 781 (Ch.1918). The purpose of the recording statute was to provide a substi-

3. Section 2312 was amended in 1949 to include an alternative method of satisfaction. A chattel mortgage "may be satisfied on the margin of the page where such chattel mortgage is docketed, which satisfaction shall be attested by the recorder." Under this method, which was not here followed, the margin notation takes the place of a satisfaction piece, but it is signed by the mortgagee or his agent and attested by the Recorder and, accordingly, satisfaction is premised here also on authorization from the mortgagee or assignee.

4. It seems to me that the document tendered should have been accepted and processed by the Recorder under Section 2308(b) as an "instrument affecting the lien of a chattel mortgage" and that this section governs the legal effect of the recording of the tendered instrument. Under that section also, "the instrument" filed is what affects the lien.

tute for the retention of possession and, thereby, to permit a mortgagee to perfect his interest in personal property retained by the mortgagor by giving record notice of its existence. 1 Jones, Chattel Mortgages and Conditional Sales, §§ 176, 190, cited with approval in Union National Bank v. Topkis Brothers Co., 23 Del.Ch. 59, 2 A.2d 148 (Ch.1938). Upon recording, the mortgagee is expressly granted a lien superior to all subsequent creditors, purchasers, mortgagees and other encumbrancers. 25 Del.Ch. § 2305.

To adopt the Trustee's construction of Section 2312 would deprive the mortgagee of the security which the statute was designed to provide. If unauthorized satisfaction notations by the Recorder were held to discharge a mortgagee's lien, he would have no way to assure himself of his statutory lien, short of a constant vigil at the Recorder's office during the life of the mortgage. On the other hand, the Referee's construction of the statute does not errode its notice function. Sections 2312 and 2308(b) require that the Recorder file, as well as note the existence of, satisfaction pieces and instruments "affecting the lien of a chattel mortgage". Accordingly, unlike the mortgagee, potential purchasers and encumbrancers, as well as anyone else interested in the mortgagor's assets, can protect himself against loss from unauthorized notations. They need only look beyond the Recorder's notation to the underlying documents of record. See Harris v. Cook, 28 N.J.Eq. 345 (Ch.1877); Atlas Lumber Co. v. Canadian American Mortgage & T. Co., 36 N.D. 39, 161 N.W. 604 (Sup.Ct.1970).

Finally, the Referee's conclusion is supported by analogous case law from other jurisdictions. The weight of authority is to the effect that the lien of a recorded mortgage remains unaffected by an unauthorized satisfaction of record and will be enforced against a subsequent purchaser or encumbrancer for value in the absence of negligence on the part of the mortgagee or other circumstances which provide an independent basis for denying to the mortgagee the benefits of his legal lien. See *e. g.*, In re Allee, 55 F.2d 76 (7 Cir. 1932); Aultman, Miller Co. v. Sloan, 115 Mich. 151, 73 N.W. 123 (Sup.Ct.1897); Harris v. Cook, *supra;* Atlas Lumber Co. v. Canadian American Mortgage & T. Co., *supra;* Brown v. Henry, 106 Pa. 262 (Sup.Ct.Pa. 1884); Farmers Savings & Loan Co. v. Kline, 92 Ohio App. 406, 109 N.E.2d 525 (Ct.App.1951) (priority over subsequent judgment creditor) and other cases collected in Annotation: Mortgage—Discharge—Mistake, 35 A.L.R.2d 948 (1951).[5]

■ Moving to the Trustee's second argument, it is conceded that where an erroneous notation of satisfaction results from a mortgagee's own negligence, a subsequent purchaser or encumbrancer for value and without notice may prevail. The Referee concluded, however, that the Bank was not guilty of any negligence which contributed to the entry of the erroneous satisfaction. The Referee found that all of the facts relied upon by the Trustee as demonstrating negligence, other than the allegedly misleading caption, were not causally related to the erroneous entry. I agree. He then concluded that "there is nothing of record to indicate the caption on the release was improper other than the Trustee's argument to that effect."[6]

5. In addition to the practical considerations discussed above relating to the proper functioning of the recording system, the most frequently expressed rationale for the holding of these cases is that where there is no countervailing equity, the first perfected lien will prevail. In another context, a Delaware court has subscribed to this principle. Ferris v. Chic-Mint Gum Co., 14 Del.Ch. 232, 124 A. 577 (Ch.1924).

6. There is some indication that the Referee also concluded that the Trustee's reliance on this principle was misplaced since as a "mere judgment creditor", rather than a bona fide purchaser, he had not "given up anything in reliance upon the erroneous satisfaction". See Stoeckle v. Rosenheim, 10 Del.Ch. 195, 87 A. 1006 (1913). It is unnecessary to decide this point, however.

■ Whatever standard is applied in reviewing this finding of ultimate fact,[7] it must be sustained. The Trustee's argument is that the caption of the release should have read "Partial Release" rather than "Release". While it is true that the clerk probably would not have entered the satisfaction notation if the tendered instrument had had the former caption, this does not mean that the Bank failed to exercise due care. I agree with the Referee that there was nothing improper about the caption of the instrument. A partial release, though partial, is nevertheless a release and the text of this document made it clear that the instrument was a release pertaining to some but not all of the equipment.

■ The Trustee's final argument is based upon Section 60 of the Bankruptcy Act. That section provides that certain transfers within four months prior to the filing of a bankruptcy petition are preferences which are voidable by the Trustee. Subsection (a) (6) thereof, upon which the Trustee specifically relies, provides, in part, as follows:

"The recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section. If a transfer is for security and if (a) applicable law requires a signed and delivered writing, or a delivery of possession, or a filing or recording, or other like overt action as a condition to its full validity against third persons other than a buyer in the ordinary course of trade claiming through or under the transferor and (B) such overt action has not been taken, and (C) such transfer results in the acquisition of only an equitable lien, then such transfer is not perfected within the meaning of paragraph (2). Notwithstanding the first sentence of paragraph (2), it shall not suffice to perfect a transfer which creates an equitable lien such as is described in the first sentence of paragraph (6), that it is made for a valuable consideration and that both parties intend to perfect it and that they take action sufficient to effect a transfer as against liens by legal or equitable proceedings on a simple contract \* \* \*."

I think the Trustee reads a great deal more into this subsection than was intended. It does not define a preference or, by itself, make any transfer voidable. Rather, it deals, in a limited area, with the question of when a transfer shall be deemed to have occurred for the purpose of applying the definition of a preference set forth in Subsection (a) (1). 3 Collier, Bankruptcy, pp. 901, 1036–1041 (14th Ed. 1969). It will suffice for present purposes, however, to say that Subsection (a) (6) deals with transfers creating equitable liens which could be, but have not been, perfected against bona fide purchasers, other than a buyer in the ordinary course of trade. I have previously concluded that the Bank acquired a valid legal lien with the priorities specified in Section 2305 when the chattel mortgage was recorded, and that this lien, insofar as it related to the equipment not specified in the release, remained unaffected by the unauthorized satisfaction notation. It follows that Subsection 60(a) (6) is not here pertinent.

The only transfer disclosed by the record in this case took place in 1966 and the security interest thereby conveyed was perfected by recording in that year. The bankruptcy petition was filed in 1968, well over four months later. Accordingly, there was no voidable preference under Section 60 of the Bankruptcy Act.

Submit order.

---

7. Both parties agree that findings of ultimate fact are not to be reviewed under the "clearly erroneous" test. The Trustee maintains that the court can "weigh the record and draw what inference needs to be drawn", citing McChesney v. Sims, 267 F.2d 215 (2 Cir. 1959). I need not decide whether this suggested test varies from that set forth in In re Arbycraft Co., 288 F.2d 553, 556 (3 Cir. 1961).