## Veatch's Adm'r et al. v. Loverett et al.

(Decided May 29, 1936.)

C. E. RANKIN for appellants.

F. DOUGLAS CURRY and BACON R. MOORE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Revers-

John T. Veatch died intestate on February 14, 1934, a citizen of and resident in Mercer county, Ky. He was a farmer and owned considerable land at the time of his death, but only a limited amount of personalty. He was indebted to a considerable extent, and it was secured by a lien upon some or all of his real estate. Decedent left no widow surviving him, but he did leave a number of surviving heirs, some of whom were of the first degree (children) while others, whose parents were dead, were more remote. One of his sons was Allen T. Veatch, who for many years prior to his father's death was a way- ward, wandering, and spendthrift son. He made many financial demands of his father, the last of which was for a considerable sum and it was advanced by the par- ent on December 8, 1927. That amount, with others previously made, aggregated $6,601.49, and the father at the time prepared a paper for his son to sign in the form of a promissory note payable one day thereafter, and by which the son agreed to pay the total amount indicated to his father one day thereafter. The note was sent to the then Indiana post office of the son for signa- true thereto as prepared by the father who had written on its face, at the bottom of the left-hand corner, a promise on the part of the son to account to the father's estate for the amount of the note, or any unpaid balance thereon, out of his portion of the estate upon his fath- er's death. For some reason, the son did not desire that promise to be on the face of the note and he then wrote on the back of it these words: "New Albany, Indiana, December 7th, 1927. It is agreed and understood that if the interest and principal of this note is not paid to the said J. T. [John Thomas] Veatch during his life then same [all interest then due and principal or balance due on principal] shall be deducted from my share in his estate." He then subscribed it and returned the also executed note to his father who sent him a check for $4,500, the amount the son demanded. The remaining portion of the note was composed of prior payments made by the father at his son's request.

The son never paid any portion of it as far as this record discloses, nor did the father attempt to enforce payment thereof, and it was found among his papers by his administrator after his death. The petition, in this action to sell the land to pay debts and for division, as- serted the right to treat the amount represented by the

note as an advancement to the son who had executed it and to have distribution of his interest made accordingly upon final judgment. A lis pendens notice was then filed in the county court clerk's office pursuant to statutory requirements asserting a lien on the son's undivided interest in the real estate of his father to satisfy pro tanto the amount so obtained by him from his deceased parent. Later, and on September 27, 1934, D. B. Loverett, a citizen of Texas, filed an ordinary action against the son, Allen T. Veatch, in the Mercer circuit court to recover of him a judgment for $1,800 upon his claim as set out in his petition, and he obtained an attachment which was levied by the sheriff on the undivided interest of Allen T. Veatch in the real estate of his deceased father. That action was later consolidated with the settlement one filed by the administrator et al. against some of the decedent's heirs and his creditors. An issue as to who was entitled to the undivided interest of Allen T. Veatch in and to the proceeds of his father's real estate was made between the attaching creditor of Allen T. Veatch and the estate of his deceased father, John T. Veatch, represented by his administrator and his heirs other than Allen T. Veatch, who was constructively summoned but did not appear in the case. The court determined that issue in favor of the attaching creditor, and to reverse that judgment plaintiffs in the settlement action prosecute this appeal.

There are only two principles available to appellants in support of their contentions that the judgment was and is erroneous, provided the facts in the case create a situation wherein they are applicable. They are: (1) The right of those sharing the estate of an ancestor to set off against the share of an heir a debt that he owes to the ancestor and which is sometimes referred to as "the right of retainer"; and (2) that the benefit conferred upon the prospective heir by the ancestor in this case, whereby the former became obligated to the latter, was transacted under such circumstances as would render the claim chargeable to the interest of the heir as an "advancement," which section 1407 of our Statutes prescribes shall be accounted for by him in the distribution of his ancestor's estate before he shall receive any part thereof. If, therefore, the facts in this case present situations where Allen T. Veatch should be made

to apply the part of his father's estate to the extinguishment of his obligation, as evidenced by the writing, supra, under either of the stated principles, then the judgment is erroneous and should be reversed—otherwise it should be affirmed, and our task is to determine which of the two conclusions is the correct one.

The right of the estate to require the indebted heir to diminish his inheritable interest in real estate of his ancestor by the amount of the debt he owed to the latter under the doctrine of set-off, or right of retainer referred to, is approved and applied by about as many courts as those that deny it, as will be seen in annotations of 1 A. L. R. on page 1017, continuing to and including page 1020. That annotation begins on page 991 of that volume and its subject is "Right of Retainer in Respect of Indebtedness of Heir, Legatee, or Distributee." It follows the opinion in the case of Wilson v. Channel, reported on page 987 of that volume, and is also reported in 102 Kan. 793, 175 P. 95. That court upheld the right of retainer or set-off as against inherited real estate. In the annotation, beginning on page 1017 of the volume referred to, the writer points out that the courts refusing to apply the doctrine of retainer or set-off as to inherited real estate, are Arkansas, Florida, Iowa, three cases from Kentucky, Massachusetts, Michigan, New Jersey, and Tennessee; whilst the courts that recognize and apply the doctrine are: One case in Kentucky (Brown's Adm'r v. Mattingly, 91 Ky. 275, 15 S. W. 353, 12 Ky. Law Rep. 869), the reported case from Kansas, and others from Missouri, North Dakota, Ohio, and Texas. The opinions refusing to apply it as to inherited real estate by the heir (though upholding and applying it in case of personalty inherited by him) distinguish the two classes of property—so as to deny the application of the principle in the one case and apply it in the other—upon the theory that title to the personalty of a decedent vests in his personal representative, whilst the title to realty vests immediately upon the death of the ancestor in his heir or heirs. But, conceding such differentiation, the question arises—Is it sufficient to sustain the rulings of those courts as based upon such apparently immaterial distinctions? The fact is that the title to the personalty which vests in the personal representative is only a naked one for fiduciary purposes only with the equitable title in the heirs, sub-

ject to the right of the personal representative to pay debts of the ancestor from the proceeds of his real estate if necessary therefor. He has the right and it is his duty to require the sale of enough real estate to satisfy any balance of the ancestor's indebtedness (after exhausting the personalty) before the heir may come into possession of his share of it, but to which he took immediate title upon the death of his ancestor.

But, putting aside that questionable distinction, the courts applying the doctrine of retainer and set-off as against inherited real estate by the heirs do so "on the ground that, under the local statute of distribution, realty and personalty are blended into one fund distributable among the same persons, who, therefore, are in a position to require one another to account for such portion of the decedent's estate as they have already received." Annotation, supra. Our statutes of inheritance and distribution are substantially the same as those in the states whose courts uphold and apply the doctrine to both classes of inherited property alike, and it would seem that those opinions are more logically supported than those limiting the application of the doctrine. In the Mattingly Case supra, we, in an opinion prepared by Judge Bennett, upheld the right as pertaining to both classes of property, and in doing so said: "But it is clear that the distributee's interest in the real estate should be extinguished to the extent that the amount he has received from the ancestor exceeds his interest in the personal state. He stands in the attitude of having received so much from the estate, and, if his distributive share in the personal estate is not equal to the amount thus received, the real estate ought to be held to be charged with the payment of the remainder, in the division, and he to receive that much less. This is the only equitable rule; were it otherwise, the one heir might virtually get a double or treble portion."

Some of our subsequent opinions characterized that excerpt as dictum because the heirs of the estate there involved were not parties to the action, but none of them attempt to refute the sound reasoning of Judge Bennett that he employed in writing it. However, in the case of Neel v. Campton, 201 Ky. 1, 255 S. W. 840, 30 A. L. R. 765, Judge Sampson, writing for this court, refused to apply the doctrine of set-off or retainer in such circumstances as against inherited real estate. He referred in

the opinion to Scobee v. Bridges, 87 Ky. 427, 9 S. W. 299, 10 Ky. Law Rep. 390, and to others prior to the Mattingly Case, supra, as denying the right, under his interpretation of them, but he made no reference whatever to the Mattingly Case. However, we will not now undertake to formulate and declare what we conceive to be the correct rule with reference to that principle, since we have concluded that the contention of appellants should have been sustained under principle (2), supra, or under another deduced one bringing about the same result.

Technically, at common law, an advancement by an ancestor to an heir for which the latter must account in the settlement of the ancestor's estate was created when the ancestor bestowed financial benefits upon his heir, without consideration, and without an intention to make an absolute gift. However, our statute, section 1407, supra, clothed all gifts by the ancestor without valuable consideration with the quality of an advancement; but it is uniformly held that an unqualified obligation of the heir to pay a named sum of money to his ancestor in the latter's lifetime, as in the case of an unqualified note, will not be treated as an advancement with consequential results flowing therefrom. Therefore, it is insisted by counsel for appellee in this case that, since the obligation of Allen T. Veatch (the heir in this case) to his father was in the form of a note, it may not be treated as an advancement so as to charge the inherited interest of the son in the father's real estate with that amount, and that, as a consequence thereof, appellee's attachment should prevail over the right of the estate to do so.

One of the cases relied on for that contention, and the one approaching nearest to this one in its facts, is that of Gudgell v. McClure, published only in 3 Ky. Opin. 518. The note executed by the son in that case to the father was in all of its essentials the same as the Veatch writing in this case. The lower court held that the other inheritors of the father's real estate had the right to require the interest of the debtor son to apply his interest in his father's real estate to the pro tanto extinguishment of his note; but that he would also be liable for any balance that such application would leave unpaid, since the obligation was not a technical advancement. We do not have the question here as to whether Allen T. Veatch could be made to account to the estate for the

balance of his obligation to his father, remaining after crediting his share in his father's real estate on such obligation, but we do have the question of the right of the heirs to enforce such credit and which the court upheld and applied in the Gudgell opinion, contrary to the judgment of the trial court in this case.

In the case of Elliott v. Leslie, 124 Ky. 553, 99 S. W. 619, 620, 30 Ky. Law Rep. 743, 124 Am. St. Rep. 418, we applied a deduced principle from the law of advancement which we conclude supports the contention of appellants in this case, and requires that a reversal of the judgment should be ordered and Allen T. Veatch's interest in the proceeds of his father's real estate be applied to the obligation he executed to him. In that case the son had executed to his father this writing: "Whereas, there is an unfortunate suit pending in the Pike circuit court of my father, James H. Leslie, against me; now, in order to settle said suit and avoid litigation, and in consideration that my father has this day given and paid to me in cash one thousand dollars; which I accept in full of all my present or future interest in my father's estate, whether real, personal or mixed, and I hereby forever acquit, release and relinquish all right or claim to or in his estate, and will not claim any part of his estate as against him or any of his heirs or devisees. The payment as above stated is to be in full of any future interest in his said estate. The said J. H. Leslie is to pay the legal cost of suit between us, but not my lawyer's fee. This does not include my interest in my mother's estate." No element of advancement appears in that writing. On the contrary, it exclusively evidenced a business transaction. But when its terms came to be applied after the father's death, the question arose as to whether it had the effect to convey or release the son's expectant interest in his father's estate to the latter. The major part of the opinion is devoted to a discussion of that question—finally concluding that the contract was void as being against public policy, and that the son, therefore, parted with no consideration for the $1,000 advanced to him by his father, and that he should, under an implied contract, repay that amount to the estate. That conclusion necessarily held that the father in his lifetime could have repudiated the contract and sued for the $1,000 advanced to his son on an implied contract, as based upon the same invalidating rea-

soning employed in the opinion. Nevertheless, in order to administer justice and equality among the heirs, we held therein, as did the trial court, that the son should account to the estate after the death of his father for the $1,000 so received by him, and to be charged therewith "as an advancement," which we said was "the sensible, reasonable and legal effect of it" (the contract). We furthermore said: "It is immaterial whether he [father] intended to charge the heir with the property donated or not, or what his purpose was in making the advancement." That equitable conclusion, as we have remarked, was rested upon a deduced principle from the law of advancement in order to work out justice, equality, and equity between the heirs which is the presumed intention of the ancestor in creating a technical advancement. The equitable principle so declared and applied in the Elliott Case has not been impaired by later opinions, but, on the contrary, has been approved.

It is true that we bottomed our opinion in the Elliott Case upon the theory of a failure of consideration which created an implied contract for the heir to repay to his ancestor the amount advanced, and which is the exact situation in this case. In the Elliott Case it was a futile attempt on the part of the heir to convey to his ancestor the expectancy of the heir in his parent's estate after the latter's death. In this case there was an attempt to pledge that interest, which is the only distinction between the two cases—that of a sale in the one instance, and a pledge in the other. Perhaps John T. Veatch, the ancestor in this case, would not have advanced the money to his son, Allen T. Veatch, without the pledge on the part of the latter, and when the pledge fails the same consequences should follow as applied in the Elliott Case in case of a sale.

More extended elaboration could be employed in demonstrating that the parties to the transaction here involved never expected, and possibly never intended, that the obligation of Allen T. Veatch be paid during his father's lifetime. Each of them agreed at the time of its creation that it should be treated as an advancement by the father to the son, upon a definite contingency, which happened. They each said so, and it is clear that if the question was exclusively between the son and his associate heirs, the former would be compelled to submit to a credit of his portion of the estate upon

his obligation. However, it seems to be the opinion of learned counsel for appellees that in some way his client, the attaching creditor of the son in this case, obtained some sort of right in the attached property superior to that of his debtor. That contention is in conflict with the universal rule that an attaching creditor "stands in the shoes" of his debtor and acquires no higher rights in the property attached than the defendant in the attachment. It should also be remembered that in this case the attaching creditor (appellee) was an antecedent one; nor was his debt created upon the expectation on his part that his debtor was the owner of the property now sought to be subjected to its payment. The property attached was, as we have concluded, subject to be applied as a credit on his debtor's obligation to his father's estate and appellee is in no position to extinguish that right in favor of the heirs by the mere levying of his attachment upon the interest he seeks to appropriate. Nothing in the record supports any such urged superior equity.

The questions discussed and determined were raised by a demurrer filed to the petition in the settlement suit as amended by appellee Loverett, after his independent action had been filed and consolidated therewith. The court sustained the demurrer, thereby denying the asserted right to charge the interest of Allen T. Veatch in his inherited interest in his father's real estate with the payment of his obligation, and then rendered the judgment appealed from.

It follows from what we have said that the court erred in sustaining that demurrer, and for which reason the judgment is reversed to the extent that it gave superiority of lien to appellee Loverett, on the interest of Allen T. Veatch in the proceeds of his father's realty, with directions to set it aside and to overrule his demurrer to the petition in the settlement suit setting up a superior claim to that interest in favor of the estate as against Loverett's attachment lien, and for proceedings consistent with this opinion. The whole court sitting.