ANDERSON BUICK COMPANY, *Respondent*, v. F. MILLER
COOK, *et al., Defendants*, ARTHUR M. HARE, *et al.,*
*Appellants.*[1]

[1]Reported in 110 P. (2d) 857.

W. C. *Hinman,* for appellants.

*Clarke, Heussy & Lemargie* and *Jerome K. Kuyken- dall,* for respondent.

JEFFERS, J.—This action was brought by Anderson Buick Company, a corporation, against F. Miller Cook, Arthur M. Hare, Theodore S. Turner and David A. Maurier, doing business as Hare, Turner & Maurier, and William B. Severyns, as sheriff of King county, to recover judgment on a note and foreclose a chattel mortgage, which it is claimed was given to secure the note. Defendants Hare, Turner & Maurier, by virtue of an attachment, claimed a prior lien on the property described in the chattel mortgage.

The material facts are not in dispute. On September 19, 1939, plaintiff loaned defendant Cook $408.70, tak- ing Cook's promissory note for that amount, the note being payable at the Seattle First National Bank, at its banking house, Second avenue and Cherry street, Seattle, Washington. Cook, at the time of making the note and as a part of the same transaction, to secure the note, made and executed a chattel mortgage on an automobile owned by him. In this chattel mortgage, the Seattle First National Bank (hereinafter referred to as the bank) was named as mortgagee. The mort- gage recites that it was given to secure a promissory note for $408.70, of even date, made by the mortgagor, payable to the order of the mortgagee.

The note and mortgage were delivered by Cook to plaintiff, who had the mortgage duly filed for record on September 21, 1939. The note has at all times since such transaction been in the possession of plain- tiff, and no delivery of the chattel mortgage was made to the bank. It does not appear that the bank knew of this particular note and mortgage until October 14, 1939, at which time the bank made an assignment of

the mortgage to plaintiff. Mr. Gardner, an employee of plaintiff who handled the Cook deal, testified to the transaction as hereinbefore described, and his testimony is not disputed. The reason for naming the bank as mortgagee is shown by the testimony of Mr. Munger, vice-president of the bank, who testified relative to an arrangement between plaintiff and the bank, as follows:

"Q. What was the arrangement between the bank and the Anderson Buick Company? A. We had established a line of credit for the Anderson Buick Company—a substantial line—which was to be available against collateral, consisting of either chattel mortgages representing loans on cars, or contracts on cars, representing the sale of cars, and the arrangement was in more detail that the Anderson Buick Company would use our forms of contract and chattel mortgage, and would accumulate those forms or those loans or contracts until they had a substantial amount, and then would borrow from us in round amounts of five, ten or twenty-five thousand dollars, bringing us those contracts and mortgages as collateral at the time that they actually consummated such loans. Q. And on the consummation of any individual transaction you did not require that the actual documents be taken right down to the bank, did you? A. No, sir. Q. It was the customary practice that they be left with the Anderson Buick Company? A. That was the arrangement which we had in effect with them."

On October 11, 1939, defendants Hare, Turner & Maurier instituted an action in the superior court for King county, against defendant Cook, to recover the sum of $404.50, and on the same day caused a writ of attachment to issue, pursuant to which the sheriff of King county attached the Cook automobile, being the car covered by the chattel mortgage above referred to. On November 4, 1939, judgment was entered against Cook in the Hare, Turner & Maurier action, and the

automobile held by the sheriff under the attachment was ordered sold to satisfy the judgment.

Plaintiff, on November 10, 1939, instituted this action on the note held by it, wherein it sought to foreclose the chattel mortgage given by Cook. Plaintiff sought and obtained a temporary restraining order in the Hare, Turner & Maurier action, restraining the sheriff from selling the Cook automobile.

The evidence conclusively shows that defendants made no examination of the record, to determine whether or not the Cook automobile was mortgaged, until October 26th or 27th, which was some two weeks after the attachment had been levied, and, of course, more than a month after the note and chattel mortgage here in question had been given, and almost two weeks after the assignment by the bank to plaintiff of the chattel mortgage.

The testimony further shows that, on October 30, 1939, Maurier, one of the defendants, made some inquiry at the bank, and was informed by Mr. Gormley that he could find no record of the transaction between Cook and plaintiff, but Mr. Gormley could not say whether or not the Metropolitan branch of the bank had a record of it.

No fraud was claimed as against plaintiff or the bank.

The court, after hearing the testimony and argument of counsel, asked for briefs, which were submitted by the respective parties, and thereafter the trial court made and entered findings of fact, conclusions of law, and a decree, wherein judgment was granted to plaintiff and against defendant Cook for $408.70, together with costs. The decree further provided that the chattel mortgage given by Cook to the Seattle First National Bank, and assigned to plaintiff prior to the commencement of its action, be decreed

to be a first, prior, and paramount lien on the Cook automobile, and that such lien was superior to any right, title, claim, or lien of defendants, or any of them, and further ordered the foreclosure of the chattel mortgage.

Defendant Cook defaulted. Defendants Hare, Turner & Maurier filed motions for judgment notwithstanding the oral decision of the court and for new trial, which motions were denied, and defendants Hare, Turner & Maurier have appealed from the judgment entered.

Appellants make eight assignments of error, wherein they claim the court erred in holding the chattel mortgage valid though without consideration as to the bank; in holding that the mere filing of the mortgage by Anderson Buick Company, without knowledge or acceptance by the bank, constituted delivery; in holding that the mere filing of the mortgage, without knowledge or acceptance by the bank, *ipso facto* made the bank a trustee for respondent; in holding that respondent could foreclose its mortgage, and that respondent's right under the chattel mortgage was superior to the right of appellants under their attachment; in entering judgment in favor of respondent; in denying appellants' motion for new trial and their motion for judgment notwithstanding the decision of the court.

The argument of appellants under all their assignments deals with the validity of the chattel mortgage at the time it was signed by Cook and delivered to respondent, or the effect of the assignment to respondent.

It seems to us that appellants, in much of their argument, have failed to take into consideration the arrangement between respondent and the bank, and that their argument is not based upon the factual situation as herein presented, but that they have assumed a factual situation as follows: That the Cook mort-

gage to the bank was not given to secure the note given to respondent and was entirely disconnected with it; that the mortgage was made to a party who knew nothing of it and had no relation to it; that there was no consideration for the mortgage flowing from the named mortgagee to the mortgagor; that, by reason of these facts, the mortgage was invalid, the bank never acquired an interest therein, and the bank's assignment on October 14th, to respondent, conveyed no interest to respondent; that the bank could not have foreclosed the mortgage, and consequently respondent could not foreclose.

Appellants cite authority to the effect that, in order that a mortgage be valid, there must be a debt, to secure which it is given; that there must be a delivery and acceptance of the mortgage by the mortgagee; and that the mortgagee can assign no greater right than it has. We agree generally with the principles of law stated by appellants, and the authorities cited to sustain them, except that consideration for a mortgage must flow from the mortgagee to the mortgagor, but we cannot agree that the application of such principles requires a reversal of the judgment entered in this action. We agree with appellants that, if the chattel mortgage was not a valid mortgage on September 19, 1939, the date it was signed by Cook and delivered to respondent, then the assignment of October 14, 1939, by the bank to respondent, could not validate the mortgage and make it superior to appellants' lien by virtue of their attachment levied on October 11, 1939.

We are of the opinion the judgment of the trial court may be sustained upon two grounds, but before discussing them, we desire to present the view of the trial court, as expressed in its memorandum opinion:

"Here there is no question but what the sum of $400 was actually loaned by the plaintiff to the defendant

Cook; that the chattel mortgage was also executed and filed as a part of the same transaction; that the defendants Hare, Turner & Maurier were not in any way deceived thereby, nor are they in any position to claim an estoppel because they sought no information regarding the facts from the bank until more than two weeks subsequent to the levy of the attachment; that the said mortgage was valid as against the defendant Cook, and it would seem that the attaching creditors could secure no greater rights than the mortgagor himself."

We are of the opinion the mortgage here in question was valid as to Cook, the mortgagor, and this being so, we think it follows that it was valid as against appellants, who were attaching creditors of Cook's interest in the property covered by the mortgage.

In *Waddell v. Roberts,* 139 Wash. 273, 246 Pac. 755, we stated:

"An attaching creditor, or an execution creditor, levying upon and selling property as the property of his debtor, is not an innocent purchaser, or a *bona fide* purchaser for value. He takes in the property only such interest as his debtor has. [Citing cases.]"

In the early case of *Foster v. Berkey,* 8 Minn. 351, we find a discussion not only of the first question now under consideration, but also a discussion of whether or not a mortgage may be given to one person to secure a debt owed by the mortgagor to another. The opinion states:

"In regard to the mortgage and notes, the Judge charged, that 'it is incumbent on the Plaintiff to show a consideration for the mortgage, and that it was properly made and filed. It is not necessary that the consideration should move from the party to whom the mortgage is given.'"

The opinion continues:

"The inquiry in regard to this, involves the question of the validity of a mortgage given to secure a debt

which is not owned, at the time of the giving the mortgage, by the mortgagee."

The opinion then goes on with a discussion of the first question we are considering, as follows:

"But suppose Symonds [the mortgagor] were Defendant in this suit to establish title in the mortgagee, upon what ground could he avoid the mortgage? No accident, fraud, or mistake is alleged or claimed in regard to the execution of the instrument—would he be permitted to urge that the instrument was invalid, because at the time of the execution of the same, the debt was owned by a third party? It would seem that it would be a matter of indifference to him who held the security, so long as he received the benefit of it, if reduced to possession by the mortgagee, by having the avails of the same applied on his debt. . . . No rule of law or authorities have been cited, showing that a mortgage given under such circumstances is not binding upon the mortgagor.

"But if the mortgage is valid as to Symonds, it must be so also as against his creditors, (unless vitiated by fraud,) since they must claim under him, and can only enforce their process against his property."

In the instant case, no fraud was claimed, appellants were in no way deceived by the mortgage, and being of the opinion that the right of Cook, the mortgagor, to the automobile was subject to the mortgage, appellants, by their attachment, could obtain no greater right than Cook had.

We now come to the second question, which goes to the merits, and in regard to which appellants' argument is directed to the necessity of there being consideration flowing from the mortgagee to the mortgagor, delivery, and acceptance by the mortgagee. In 14 C. J. S. 648, § 42, subd. 1, we find this general statement: "The consideration for a chattel mortgage may move from a person other than the mortgagee." In the same volume of C. J. S., at page 644, § 37, this

statement is found: "A mortgage may be given to one person to secure a debt owed by the mortgagor to another." The same principle is announced in 5 R. C. L. 419, § 48.

1 Jones on Chattel Mortgages and Conditional Sales (Bowers ed.), 157, § 84, also recognizes that a chattel mortgage may be made to secure debts to others besides the mortgagee.

This principle is sustained in the case of *Citizens State Bank v. Senesac*, 267 Ill. App. 288, in the following language:

"In our opinion the consideration of a chattel mortgage may move from a person other than the mortgagee, a proposition which would appear to be indisputable under elementary principles of contract law."

In the case of *Connecticut Mutual Life Ins. Co. v. Shelly Seed Corp.*, 46 Ohio App. 548, 189 N. E. 654, the validity and priority of a chattel mortgage were upheld by the court. The opinion states in part:

"The chattel mortgage held by the defendant bank on said property was executed and filed as a chattel mortgage in the office of the county recorder prior to the filing of the petition for foreclosure and the motion for a receiver, and was based on a valuable consideration, to wit, money owing by the Shelly Seed Corporation to the bank.

"The plaintiff contends that this mortgage was void for the reason that it was executed to the Henry County Agricultural Corporation, which was not the real party in interest, and that the sworn statement thereon required by law was made by the agent of the agricultural corporation and not by the agent of the real party in interest, which was the bank.

"In the absence of fraud, a mortgage may be held for the security of the real creditor whether he is the party named as mortgagee, or some other party, for the provisions of the mortgage are not necessarily personal to the mortgagee named."

The case of *First Nat. Bank v. National Grain Corp.,* 103 Conn. 657, 131 Atl. 404, sustains the judgment entered by the trial court herein. In the cited case, a mortgage was made to one Resnick, who did not own the debt for which the mortgage was given as security. Resnick assigned the mortgage to the plaintiff, who brought an action to foreclose the mortgage. This foreclosure was resisted by the trustee in bankruptcy of the mortgagor. The court, in sustaining the validity of the mortgage, stated:

"It is a conceded fact that nothing was owing to Resnick, but Resnick's personal relation to the Grain Corporation [mortgagor] is not of any controlling importance to a subsequent claimant. It makes no possible difference to such claimant whether the land is held to secure Resnick or some other party. The vital thing which he is entitled to know is the extent to which the land is bound and held.

"In the absence of fraud, a mortgage may be held for the security of the real creditor, whether he is the party named as mortgagee or some other party, for the provisions of a mortgage are not necessarily personal to the mortgagee named. The real party in interest may be an assignee of the mortgagee or some one subrogated to his rights under the mortgage, or even a third person not answering either of these descriptions."

The case of *Gilmore v. Roberts,* 79 Wis. 450, 48 N. W. 522, answers, contrary to appellants' contentions, most of the questions raised by them. The cited case distinguishes the case of *Welsh v. Sackett,* 12 Wis. 243, therein referred to. The argument of appellants in the instant case might be applicable to a factual situation such as was shown to exist in the *Welsh* case, *supra,* but is not applicable herein. In the *Gilmore* case, in distinguishing the *Welsh* case, the court stated:

"That case is clearly distinguishable from the case at bar. . . . In the case before us, the mortgagor did

not undertake to act, nor to authorize any one to act, as agent for the person named as mortgagee. *The plaintiff, acting for himself, advanced the money and took the notes and mortgage as security for the repayment of the same.* The mortgagor made the notes payable to Mrs. Bradeen 'or bearer,' and then delivered them to the plaintiff, who thereby became the 'bearer' of the notes, as he was in fact the owner of the notes. The mortgage was a mere incident to the notes, and the transfer of the latter to the plaintiff necessarily carried with them the mortgage. . . . This court has recently held that 'the fact that securities were taken by one person in the name of another, who had no interest in them, does not invalidate the securities, or prevent the person beneficially interested from enforcing payment of them by action.' " (Italics ours.)

Appellants stress the fact that, in the instant case, there was no delivery of the mortgage to the bank, the named mortgagee, and that, there being no delivery, the mortgage is invalid. Under the facts in this case, the consideration for the note and mortgage was advanced by respondent, and respondent was the only party having an interest therein. The bank held the bare legal title in trust for respondent, and had no interest in the mortgage. Under these facts, we are satisfied a delivery to respondent, the real party in interest, was a sufficient delivery of the mortgage. We are of the opinion this principle of law is sustained by the case of *Crocker v. Lowenthal,* 83 Ill. 579, wherein the court stated:

"In regard to the second point, it is, no doubt, true that the deed of trust was never actually delivered to the trustee, but the grantor in the deed delivered it, together with the note it was intended to secure, to appellee, for whose benefit it was made, and who alone had rights secured by it. The trustee had no interest whatever in the trust deed, and an actual delivery to him was not required. A delivery to the *cestui que trust* would fully answer all the requirements of the

law. It is not always necessary that a deed should be delivered to the grantee therein named in order to render the deed binding and obligatory. . . . Indeed, where the grantor parts with the control of the instrument, and places it in the possession of another, with the intent and for the purpose of making it effectual and a binding contract, the delivery of the instrument will be regarded as binding and conclusive upon the grantor."

There can be no question in the instant case but that Cook delivered the mortgage to respondent, with the intent of making it a binding contract.

■ There is one other specific contention made by appellants which should receive our attention. Appellants contend that the mortgage sets forth that it is given to secure the payment of a note of the same date, given by the mortgagor to the mortgagee; that there is no claim such a note ever existed, but that respondent contends the mortgage was given to secure a note made by Cook to respondent; and that, as the note referred to in the mortgage could not be the note sued on, a judgment on the note would not authorize a foreclosure of the mortgage. We are unable to agree that the note sued on was not the same note referred to in the mortgage. It will be recalled that the witness Gardner testified that the mortgage was given to secure the note for $408.70, made by Cook to respondent, and the mortgage referred to a note of $408.70, of even date therewith. We are of the opinion this was sufficient to establish the fact that the note referred to in the mortgage and the note sued on were one and the same. Our conclusion is sustained by the case of *First Nat. Bank v. Oppenheimer*, 123 Wash. 290, 212 Pac. 164.

In conclusion, we are satisfied that there was a consideration for the mortgage flowing from respondent to Cook; that it is not necessary that the consideration

move from the mortgagee named; that, under the facts in this case, the delivery to respondent was a sufficient delivery of the mortgage; and that the note was sufficiently described in the mortgage.

We feel that a discussion of the authorities cited by appellants would be of no benefit, and we desire only to say that we have considered them and are of the opinion that they contain nothing which requires us to reach conclusions other than those arrived at herein.

Finding no error in the record, and being of the opinion there was ample evidence to support the findings of fact and judgment entered, we are further of the opinion that the trial court correctly denied appellants' motion for new trial and their motion for judgment notwithstanding the oral decision of the court.

The judgment of the trial court should be, and is, affirmed.

SIMPSON, BEALS, MILLARD, and BLAKE, JJ., concur.