D. K. PORTER, Trustee in Bankruptcy of Abe Greenband, Appellant,

v.

Woodey B. SEARLE and Edlean E. Searle, Appellees.

No. 5135.

United States Court of Appeals Tenth Circuit.

Dec. 19, 1955.

---

Harold R. Boyer, Salt Lake City, Utah (Romney, Boyer & Ronnow, Salt Lake City, Utah, on the brief), for appellant.

Dwight L. King, Salt Lake City, Utah, for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Greenband was adjudged a bankrupt on July 23, 1953, on an involuntary petition filed on June 22, 1953. Porter is the duly appointed and acting trustee.

On August 13, 1952, Woodey B. Searle and Edlean E. Searle entered into a written contract of sale with Greenband, by which they sold to Greenband all the merchandise in a retail store known as Searle's Saving Center at Vernal, Utah. The total purchase price was $26,700.69. Greenband made a down payment of $5,000 and by the terms of the contract he agreed to pay $250 on the 20th day of September, 1952, and a like sum on the 20th day of each month thereafter, until the full purchase price had been paid; and he further agreed to pay interest at the rate of six per cent per annum on the unpaid balance, the first payment to be made on December 31, 1952, and subsequent interest payments semiannually thereafter.

By the terms of the agreement Greenband further agreed "immediately to execute to" the Searles "a Chattel Mortgage" upon such merchandise and all merchandise thereafter brought into the Searle's Saving Center, to secure the bal-

ance of the purchase price. Greenband failed and refused to execute the chattel mortgage, either immediately or thereafter.

On March 2, 1953, and within the four-month period prior to the filing of a petition in bankruptcy, the Searles and Greenband entered into a release agreement by which Greenband surrendered to the Searles the merchandise in the Searle's Saving Center in satisfaction of the balance due on such contract and the Searles agreed to discharge their lien and release Greenband from any further obligation under the sale agreement. Such agreement further provided that Greenband might retain all accounts receivable and that he agreed to assume and pay all accounts payable. The Searles took possession of the stock of merchandise, pursuant to such release agreement. The valuation of the stock of merchandise taken over by the Searles was substantially less than the balance due on the sale contract.

Since March 2, 1953, the Searles have been in possession of the stock of merchandise and have operated the store.

On March 2, 1953, Greenband was insolvent.

The trustee instituted this action against the Searles to set aside the transfer of the stock of merchandise back to the Searles on the ground that it constituted a voidable transfer under § 60 of the Bankruptcy Act, 11 U.S.C.A. § 96.

From an adverse judgment, the trustee has appealed.

█ The agreement to give immediately the chattel mortgage and the failure of Greenband to do so created an equitable lien in favor of the Searles on the stock of merchandise, for which the transfer of the stock of merchandise by the Searles to Greenband was a present consideration.[1]

There is no provision of law in Utah, statutory or otherwise, which required any overt act on the part of the Searles to perfect such equitable lien. It became a perfected equitable lien immediately when Greenband failed and refused to give the chattel mortgage.

█ The trustee became vested with all the property of the bankrupt at the date of bankruptcy, with all the rights, remedies and powers of a creditor then holding a lien thereon by legal or equitable proceedings.

██ The trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same condition that the bankrupt, himself, held it[2] and subject to all valid legal or equitable liens thereon not expressly rendered void by the terms of the Bankruptcy Act.[3] Except insofar as controlled by express provisions of the Bankruptcy Act, the validity, nature and effect of a lien on the property of a bankrupt are governed by the law of the state where such property is situated.[4]

1. Olsen v. Kidman, Utah, 235 P.2d 510; Walker v. Brown, 165 U.S. 654, 664, 17 S.Ct. 453, 41 L.Ed. 865; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903, certiorari denied 307 U.S. 646, 59 S.Ct. 1044, 83 L.Ed. 1526; Haas v. Rendleman, 4 Cir., 62 F.2d 701, certiorari denied 289 U.S. 750, 53 S.Ct. 695, 77 L Ed. 1495; Geddes v. Reeves Coal & Dock Co., 8 Cir., 20 F.2d 48, 54 A.L.R. 282, certiorari denied 275 U.S. 556, 48 S.Ct. 117, 72 L.Ed. 424; Pierce v. National Bank of Commerce, 8 Cir., 268 F. 487, 494; Hutson v. Long Bell Lumber Co., D.C.Mo., 1 F.Supp. 468, affirmed Carson v. Long-Bell Lumber Corp., 8 Cir., 73 F.2d 397, certiorari denied 294 U.S. 707, 55 S.Ct. 352, 79 L.

Ed. 1242, rehearing denied 294 U.S. 731, 55 S.Ct. 506, 79 L.Ed. 1261.

2. Hurley v. Atchison, Topeka & Santa Fe R. Co., 213 U.S. 126, 133, 29 S.Ct. 466, 53 L.Ed. 729; Merchants' & Mechanics' Bank of Columbus v. Sewell, 5 Cir., 61 F.2d 814.

3. Hurley v. Atchison, Topeka & Santa Fe R. Co., 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729; Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658; Wilson v. Duncan, 5 Cir., 61 F.2d 515; Tatum v. Acadian Production Corp. of Louisiana, D.C., 35 F.Supp. 40.

4. Seymour v. Wildgen, 10 Cir., 137 F.2d 160; City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399; Ingels v. Boteler,

Under the laws of Utah, a lien acquired by legal or equitable proceedings on a simple contract is subject to prior and valid legal and equitable liens, except the lien of an unfiled chattel mortgage, where the personal property covered by the mortgage is not delivered to and retained by the mortgagee.[5]

Prior to the Chandler Act a pledge or transfer made within the four-month period was valid, when made pursuant to a promise to make a pledge theretofore given, under the doctrine of relation back.[6]

Section 60 of the Bankruptcy Act, as amended by the Chandler Act, overruled the cases applying the doctrine of relation back, but in so doing placed the trustee in the position of an artificial potential bona fide purchaser and unintentionally invalidated many types of liens acquired in good faith and for value in normal and accepted business and financial relationships.

In the case of Corn Exchange National Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, the bankrupt had made an assignment of accounts receivable to secure present advancements of funds. No second assignee was involved. Notice was not given to the debtors owing such accounts receivable. Under Pennsylvania law, the assignment was not perfected until such notice had been given. The Supreme Court held that the assignments were preferences under § 60, sub. a of the Bankruptcy Act, as amended by the Chandler Act, and were voidable by the trustee under § 60, sub. b of the Bankruptcy Act, on the ground that the trustee's rights were to be measured by those of a good faith purchaser, under the Chandler Act, as amended. See also, In re Quaker City Sheet Metal Co. (Appeal of Klauder), 3 Cir., 129 F.2d 894.

In re Vardaman Shoe Co., D.C.E.D. Mo., 52 F.Supp. 562, the bankrupt, prior to adjudication, obtained advances by assigning accounts receivable to the City National Bank of Centralia, Illinois, and the National Stock Yards National Bank of National City, Illinois. In that case, the court held that whether the law of Illinois and Missouri required notice of the assignment to the debtor under the assigned account or not, the right of the trustee was to be measured by that of a bona fide purchaser, and that the trustee, therefore, took the property of the bank-

9 Cir., 100 F.2d 915, affirmed 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78; In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979.

5. Pennsylvania Co. for Insurance on Lives and Granting Annuities v. United Railways of Havana & Regla Warehouses, D.C., 26 F.Supp. 379; Matsuda v. Noble, 184 Or. 686, 200 P.2d 962; Anderson Buick Co. v. Cook, 7 Wash.2d 632, 110 P.2d 857; Veatch's Adm'r v. Loverett, 265 Ky. 532, 97 S.W.2d 47; Warren Guarantee Title & Mortgage Co. v. Williams, 27 Ohio App. 505, 161 N.E. 551; Mercantile Ins. Co. of America v. Jackson, 40 Wash.2d 233, 242 P.2d 503; Sloss v. Glaze, 231 Ala. 234, 164 So. 51; Collins v. Thuringer, 92 Colo. 433, 21 P.2d 709; Clatworthy v. Ferguson, 72 Colo. 259, 210 P. 693; Union Nat. Bank of Wilmington v. Topkis Bros. Co., 23 Del. Ch. 59, 2 A.2d 148; Barber v. Beckett, 251 Ala. 569, 39 So.2d 17; Martens v. Martens, 234 Iowa 519, 12 N.W.2d 201; Penziner v. West American Finance Co., 10 Cal.2d 160, 74 P.2d 252; Richman v. Bank of Perris, 102 Cal.App. 71, 282

P. 801; Bateman v. Kellogg, 59 Cal. App. 464, 211 P. 46; Hunter v. Hunter, 327 Mo. 817, 39 S.W.2d 359; Barry v. Horton, 122 Neb. 20, 238 N.W. 763.

The lien of an unpaid seller of personalty is superior to the lien of an attaching creditor of the purchaser.

Ward v. Camp, 67 Vt. 461, 32 A. 236; Northern Bank of Kentucky v. Deckebach, 83 Ky. 154; Tuthill v. Skidmore, 124 N.Y. 148, 26 N.E. 348.

6. Sexton v. Kessler & Company, 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; To the same effect see Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; Martin v. Commercial National Bank, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed. 441 and Bunch v. Maloney, 246 U.S. 658, 38 S.Ct. 425, 62 L.Ed. 925. See, also, Carey v. Donohue, 240 U.S. 430, 36 S.Ct. 386, 60 L.Ed. 726, applying the doctrine to an unrecorded deed to real estate on the ground that the applicable statute did not make such a deed invalid as against judgment creditors.

rupt under rights superior to that of the assignees, thus extending the effect of the Chandler Act amendment even beyond that held by the Supreme Court in the Klauder case, supra.

Following those decisions, Congress, by the Act of March 18, 1950, 64 Stat. 24, amended § 60 of the Bankruptcy Act. The provisions of the 1950 amendment, insofar as they are here material, read:

"That subdivision a of section 60 of the Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, as amended, is amended to read as follows:

" 'a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

" '(2) For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * * if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition.

\* \* \* \* \* \*

" '(4) A lien obtainable by legal or equitable proceedings upon a simple contract within the meaning of paragraph (2) is a lien arising in ordinary course of such proceedings upon the entry or docketing of a judgment or decree, or upon attachment, garnishment, execution, or like process, whether before, upon, or after judgment or decree and whether before or upon levy. It does not include liens which under applicable law are given a special priority over other liens which are prior in time.

\* \* \* \* \* \*

" '(6) The recognition of equitable liens where available means of perfecting legal liens have not been employed is hereby declared to be contrary to the policy of this section. If a transfer is for security and if (A) applicable law requires a signed and delivered writing, or a delivery of possession, or a filing or recording, or other like overt action as a condition to its full validity against third persons other than a buyer in the ordinary course of trade claiming through or under the transferor and (B) such overt action has not been taken, and (C) such transfer results in the acquisition of only an equitable lien, then such transfer is not perfected within the meaning of paragraph (2). \* \* \*.

" '(7) Any provision in this subdivision a to the contrary notwithstanding if the applicable law requires a transfer of property other than real property for or on account of a new and contemporaneous consideration to be perfected by recording, delivery, or otherwise, in order that no lien described in paragraph (2) could become superior to the rights of the transferee therein, \* \* \*, the time of transfer shall be determined by the following rules:

" 'I. Where (A) the applicable law specifies a stated period of time of not more than twenty-one days

after the transfer within which recording, delivery, or some other act is required, and compliance therewith is had within such stated period of time; or where (B) the applicable law specifies no such stated period of time or where such stated period of time is more than twenty-one days and compliance therewith is had within twenty-one days after the transfer, the transfer shall be deemed to be made or suffered at the time of the transfer.

" 'II. Where compliance with the law applicable to the transfer is not had in accordance with the provisions of subparagraph I, the transfer shall be deemed to be made or suffered at the time of compliance therewith, and if such compliance is not had prior to the filing of the petition initiating a proceeding under this Act, such transfer shall be deemed to have been made or suffered immediately before the filing of such petition.

" '(8) If no such requirement of applicable law specified in pargraph (7) exists, a transfer wholly or in part, for or on account of a new and contemporaneous consideration shall, to the extent of such consideration and interest thereon and the other obligations of the transferor connected therewith, be deemed to be made or suffered at the time of the transfer. * * *.

\* \* \* \* \* \*

" '* * * The trustee, as to all property of the bankrupt at the date of bankruptcy whether or not coming into possession or control of the court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists.'

"Sec. 3. a. All Acts or parts of Acts inconsistent with any provisions of this amendatory Act are hereby repealed."

The language of the 1950 Act is not free from ambiguity, but its purpose, meaning and effect are made clear by the legislative history of the Act.

In reporting the bill, with the recommendation that it pass, the House Committee on the Judiciary made a written report,[7] the pertinent provisions of which read:

"Purposes of the Bill

"(a) With respect to section 1 of the bill, dealing with section 60a, its purpose is to clarify the provisions of that section of the Bankruptcy Act; eliminate confusions that have been created by reason of certain court decisions discussed below; and remove the resultant serious doubts that now exist among banks, factors, and other extenders of credit upon the validity of security taken in good faith and for present value. The present language of the act tends to impede and choke the flow of credit, principally to small-business men, and the object of the bill is to free its channels.

"(b) Section 2 of the bill amends section 70c of the Bankruptcy Act, dealing with the general rights of a trustee in bankruptcy, and is essentially correlative to the amendment to section 60a, effected by section 1 of the bill. Under existing law, a trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy, is deemed vested, as of the date of bankruptcy, with all of the rights of a creditor then holding a lien by legal or equitable proceedings, and, as to all other property, with the rights of a judgment creditor then holding an unsatisfied execution.

"In view of the amendment made to section 60a, as well as intrinsically, it is deemed wise to place the

7. United States Code Congressional Service, 1950, Vol. 2, 81st Cong., 2d Session, page 1985.

trustee in bankruptcy in the position of a lien creditor with respect to all of the bankrupt's property, and section 2 of the bill so amends section 70c.

## "II.   Statement

"Traditionally, it is the primary office of the Bankruptcy Act to protect creditors, both secured and unsecured; to marshall the bankrupt's assets; and to distribute them among his creditors equitably and ratably, in accordance with their respective rights and interests.

"It follows from these broad general principles, as well as from the basic provisions of the Bankruptcy Act itself, that—

"(A) A trustee in bankruptcy occupies the position of a 'universal' judgment or lien creditor; with all such a creditor's remedies (Bankruptcy Act, sec. 70); and

"(B) Except as may be necessary to avoid preferences or fraudulent transfers, he takes the bankrupt's assets subject to all valid liens and encumbrances thereon, as conferred by applicable State law (Bankruptcy Act, secs. 57(e) and (h), sec. 67(b), and sec. 70).

"This consistent pattern would probably never have been disturbed, but for a series of decisions of the United States Supreme Court in the earlier decades of this century. In Sexton v. Kessler [& Company] ( (1912) 225 U.S. 90 [32 S.Ct. 657, 56 L.Ed. 995]), the Supreme Court, under the language of the Bankruptcy Act prior to the 1938 amendment, recognized as valid a pledge of stocks and bonds consummated within the 4-month period, at a time when the pledgor was insolvent, because a promise to make a pledge had been made before the commencement of the 4-month period. This result was reached on the doctrine of 'relation back.'

"Similarly, in Carey v. Donohue ( (1916) 240 U.S. 430 [36 S.Ct. 386, 60 L.Ed. 726]), the Supreme Court recognized as valid an unrecorded deed to real estate, on the ground that the applicable State statute did not make such a deed invalid as against judgment creditors. The Carey case, accordingly, became known as the 'pocket lien' case.

"Other cases, substantially to the effect of one or the other of these two, are Bailey v. Baker Ice Machine Co. ( (1915) 239 U.S. 268 [36 S.Ct. 50, 60 L.Ed. 275]); Martin v. Commercial [National] Bank ( (1918) 245 U.S. 513 [38 S.Ct. 176, 62 L.Ed. 441]); and Bunch v. Maloney ( (1918) 246 U.S. 658 [38 S.Ct. 425, 62 L.Ed. 925]).

"In 1938 the Bankruptcy Act was amended to obviate the effect of these cases, which were regarded with disfavor by the great majority. But, in so doing, the authors of the amendment went further than was necessary, and it brought about results which they did not anticipate. The amendment placed the trustee in the position of an artificial potential bona fide purchaser, and, by so doing, unintentionally invalidated many types of liens acquired in good faith and for value, in normal and accepted business and financial relationships.

"The matter was first brought to a focus in 1943, in the case of Corn Exchange National Bank & Trust Company v. Klauder (318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884), in which the Supreme Court, because of the new language, felt constrained to strike down an assignment of accounts receivable taken by a bank long prior to the beginning of the 4-month period and for value, because it had failed to comply with the requirement of notifying the account debtors, which, under the applicable State law, was necessary in order to cut off the rights of a possible second assignee. And this, despite the fact that no second as-

signee was involved in the case at all.

"The difficulty was emphasized by the decision of the United States district court in In re Vardaman Shoe Company ((\[D.C.\]1943) 52 F. Supp. 562), where the law of two States (Illinois and Missouri) was involved. In the Vardaman case, the court went even further than in the Klauder case. (The Vardaman decision was, unfortunately, not appealed.)

"Although the Third Circuit Court of Appeals in the later case of Matter of Rosen ( (1946) 157 F.2d 997 (\[Fisch v. Standard Factors Corp.\] cert\[iorari\] den\[ied\] 330 U. S. 835 \[67 S.Ct. 972, 91 L.Ed. 1282\]), expresses its disagreement with the theory of the Vardaman case, the law thus remains in conflict, and there are 8 judicial circuits out of the 10 which have not ruled on this question.

"The resultant confusion has cast grave doubt upon the validity of normal business security, in all of the areas covered by trust receipts, factors liens, oil leases, cattle loans, airplane-equipment financing, chattel mortgages, assignments of accounts receivable, conditional sales agreements for resale, etc. Indeed, a bank officer, who appeared as one of the witnesses at the subcommittee hearing, testified that the situation had come to such a pass that his institution was compelled to regard all such types of transactions as unsecured loans, and to rule on them, as to the terms which his bank was willing to enter into them, accordingly.

\*　\*　\*　\*　\*　\*

"The objectives of section 1 of the bill are as follows:

"(A) To retain unimpaired the basic object of the 1938 amendment, which eliminated the 'relation back' doctrine of Sexton v. Kessler \[& Company\], and the 'pocket lien' doctrine of Carey v. Donohue, referred to above;

"(B) To eliminate the evil of allowing a trustee in bankruptcy to take the position of a potential and artificial bona fide purchaser, and to restore him to the position of a lien creditor, in harmony with his functions under the Bankruptcy Act; and

"(C) in effectuation of said policy, to provide that no transfer made in good faith, for a new present consideration, shall constitute a preference to the extent of such consideration actually advanced, if the provisions of applicable State law governing the perfection of such transfer are complied with, with an appropriately rigid time limitation (21 days) for such perfection if such limitation is not itself prescribed by the applicable State law."

■ Here, the equitable lien of the Searles came into being immediately when Greenband refused to give the chattel mortgage. The delivery of the stock of merchandise to Greenband constituted a present consideration for the balance of the purchase price and the equitable lien which came into being to secure the same. There was nothing further that the Searles needed to do under Utah law to perfect their equitable lien. There was no means available to the Searles by which they could have converted it into a legal lien.

The stock of merchandise was not surrendered to the Searles by Greenband to perfect their lien, but to satisfy the debt secured by the lien and to discharge the lien. It was an enforcement device and not a perfecting device that the Searles employed.

We conclude that the equitable lien acquired by the Searles was not contrary to the declared policy of the 1950 amendment, as set forth in the first sentence of sub. a (6) thereof. And, moreover, under the provisions of sub. a (8) of the 1950 amendment, the transfer for security by virtue of the equitable lien

must be deemed to have been made on August 13, 1952, when the equitable lien came into being.

Accordingly, we conclude that the lien and the delivery of the merchandise in satisfaction thereof did not constitute a preferential transfer.

The judgment is affirmed.