In re SPECTRA PRISM INDUSTRIES, INC., Debtor.

In re P.H.P. LITHOGRAPHERS, INC., Debtor.

In re SPECTRA PRISM LABORATORY, INC., Debtor.

Charles DUCK, Trustee, Appellant,

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, Appellee.

BAP No. NC–82–1161–KVE.
Bankruptcy Nos. 480–03942–H to 480–03944–H.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 17, 1982.
Decided March 15, 1983.

James A. Thompson, Wilhelm, Thompson, Wentholt & Gibbs, Redwood City, Cal., for appellant.

Stephen Kottmeier, Hopkins, Mitchell & Carley, San Jose, Cal., for appellee.

Before KATZ, VOLINN and ELLIOTT, Bankruptcy Judges.

KATZ, Bankruptcy Judge.

## I

The question presented is whether a trustee in bankruptcy, as a judicial lien creditor pursuant to Bankruptcy Code § 544(a)(1), has standing to block the issuance of an order requiring a senior lienholder to marshal its collateral.

## II

The debtors have three types of assets from which to satisfy claims of creditors: equipment, inventory, and accounts receivable. Heidelberg West, Inc. ("Heidelberg"), held the senior lien on the debtor's equipment to secure a debt of $132,750. National Acceptance Company of California ("NACC") held a blanket lien against all assets of the debtor. The NACC lien was junior only to the Heidelberg lien against the equipment of the debtor and senior on the inventory and equipment. Wells Fargo Bank, National Association ("Wells Fargo"), had a security interest only in the debtor's equipment. That lien was junior to both Heidelberg and NACC. The trustee, Charles Duck, claims to have a blanket lien as a judicial lien creditor subordinate to all of those liens by virtue of § 544(a)(1). Secured claims were held in the following manner:

| | EQUIPMENT | INVENTORY | ACCOUNTS RECEIVABLE |
|---|---|---|---|
| 1 | Heidelberg | NACC | NACC |
| 2 | NACC | (Trustee) | (Trustee) |
| 3 | Wells Fargo | | |
| 4 | (Trustee) | | |

The debtor's equipment was sold at a trustee's sale and the Heidelberg lien was extinguished with a portion of the proceeds. The remainder was to be applied to the amount owed to the junior lienors. The lien of NACC exceeded the remainder. Wells Fargo sought and obtained from the bankruptcy court an Order to Compel Marshalling of Assets and to Determine Priority of Rights in Property of the Estate. The trustee, Charles Duck, appeals the issuance of that order.

## III

"Marshalling is an equitable doctrine developed historically and traditionally used to prevent a junior lienholder with a security interest in a single property from being squeezed out by a senior lienholder with a security interest not only in that property, but in one or more additional properties. The doctrine requires the senior lienholder to first resort to assets free of the junior lien to avoid the inequity which would otherwise result from the unnecessary elimination of the junior

lienholder's security with the increased likelihood the junior creditor will be unable to satisfy its claim."

*Shedoudy v. Beverly Surgical Supply Co.,* 100 Cal.App.3d 730, 733, 161 Cal.Rptr. 164 (1980). The basis for marshalling is in California Civil Code §§ 2899 and 3433.

■ There are four basic requirements which must be met before a marshalling order may be imposed on a second lienholder. First, there must be two or more funds. Second, only one of the creditors may have the right to resort to both funds. Third, there must be an absence of prejudice to the senior lienholder. Finally, the imposition of marshalling must avoid injustice to third persons. *Victor Gruen Associates v. Glass,* 338 F.2d 826, 829 (9th Cir.1964).

■ The sole element at issue in the case is the final one. The trustee asserts that, in his capacity as a hypothetical judicial lien creditor, under § 544(a)(1), he is prejudiced by the order. He claims the order should have been denied on that ground. All parties agree that injury or prejudice to a third party constitutes adequate grounds to deny an order to marshal assets. We agree with the claim that the trustee is prejudiced when assets, potentially belonging to the estate, are lost as a result of a marshalling order.

■ When the trustee is given status under § 544(a)(1) to act as a judicial lien creditor, he obtains the right and power to protect the assets of the estate to the same degree that any judicial lien creditor would be able to.

The question of a trustee's status as a hypothetical judicial lienholder under § 544 was previously dealt with by § 70(c) of the Bankruptcy Act. The legislative history of the "strong-arm clause" indicates that the basic purpose underlying the section was to avoid the "evil" of secret liens and transfers of the debtor's property. 45 Cong.Rec. 2277 (1910). However, that basic purpose is not its sole purpose. Concerning § 70(c), the court in *Sampsell v. Straub,* 194 F.2d 228 (9th Cir.1951), held:

"[W]hether its impact in a particular case is upon secret liens or upon some other impediment to the distribution of the property of the debtor ... Section 70 sub. c embodies a comprehensive conception of according the trustee such status as a diligent general creditor might have achieved but for the intervention of bankruptcy."

*Sampsell v. Straub, supra,* at 231.

The stature of the trustee as a judicial lien creditor has been expanded consistently over the 80 years of the existence of the Code sections. Today, under § 544(a), the trustee may act not only to avoid transfers of the property of the debtor, but he is granted all other rights and powers that a creditor holding a judicial lien would have had after prevailing in a simple contract action, whether or not such creditor exists in fact.

We are mindful of the holding of the Ninth Circuit Court of Appeals in *Forester v. Steward,* 529 F.2d 310 (9th Cir.1976), denying a marshalling order to a trustee in bankruptcy. That decision standing alone would result in affirmance of the judgment below.

■ We note, however, that the validity, nature and effect of liens are governed by the law of the state where the property is situated. *In re Knox-Powell-Stockton Co.,* 100 F.2d 979 (9th Cir.1939); *Porter v. Searle,* 228 F.2d 748 (10th Cir.1955).

The case of *Shedoudy v. Beverly Surgical Supply Co., supra,* is dispositive of the marshalling question herein. *Shedoudy* stands for the proposition that a judgment creditor is a junior claimant entitled to a marshalling order even when no foreclosure is pending.

The marshalling order in the instant case prejudices the interests of the trustee in his capacity as a judicial lien creditor.

We believe that prior to the *Shedoudy, supra* holding California law was unclear as to whether a judicial lien creditor was within that class whose interests could not be prejudiced by a marshalling order. It is our opinion that *Shedoudy, supra* resolved the

confusion by recognizing that such a creditor could indeed be prejudiced. That creditor should, therefore, be permitted to block such a motion.

We believe that the Ninth Circuit court, deciding the issue today, after the holding in *Shedoudy, supra,* would arrive at a different result than it did in *Forester.*

We therefore REVERSE the trial court with directions to vacate the marshalling order.

VOLINN, Bankruptcy Judge (dissenting):

If the parties were not involved with bankruptcy, there is no question that marshaling would be properly granted over objections by general unsecured creditors. The essential issue then, is whether the fictional status of a judgment creditor granted to the trustee under 11 U.S.C. § 544 was intended to be used in a marshaling context for the purpose of displacing a validly secured creditor in order to provide general unsecured creditors access to assets which otherwise would be unavailable to them.

While the language of § 544 and its Bankruptcy Act predecessor, § 70(c), appears to endow the trustee with the judgment lien, cases under these sections rarely, if ever, hinge on the lien as an intrinsic property right of the trustee. The great number of decisions dealing with these sections have tested the validity or viability of transfers or claims on the debtor's property against the abstract standard of the hypothetical judgment creditor as if the trustee were of this character. *See, In re Weiman,* 22 B.R. 49 (Bkrtcy.App. 9th Cir.1982); *Caplinger v. Patty,* 398 F.2d 471, 475 (8th Cir.1968) (which dealt with the marshaling issue before us). If the transfer or claim failed this test, the trustee would take, free of the defective claim or use it for the benefit of the general creditors, thereby effectuating a fundamental bankruptcy policy—defeasance of secret, undisclosed, or unperfected claims so as to bring about equality of distribution among creditors.

Here, insofar as § 544 is concerned, Wells Fargo does not have an undisclosed or imperfect claim which is defeasible by a judgment creditor. It is a valid, perfected claim. Invocation of § 544 is therefore inappropriate. The case of *Lewis v. Manufacturer's Bank of Detroit,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961), is pertinent. In refusing to allow the trustee to reach back to a point anterior to the filing of bankruptcy, in order to claim imperfection, and recognizing that "in some instances the trustee has rights which existing creditors may not have", the court stated:

"The construction of § 70c which petitioner urges would give the trustee power to set aside transactions which no creditor could void and which injured no creditor. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy." 364 U.S. at 608, 81 S.Ct. at 350.

The applicability of § 70(c) to the specific issue before us was clearly before the court in the case of *In re Forester,* 529 F.2d 310, (9th Cir.1976) which dealt with the California marshaling statutes in question, Cal.Civ. Code, §§ 2899 and 3433. *Forester,* essentially, held that the trustee would be no more entitled to marshaling than the debtor. It noted, in passing that

"There would be no injustice to others since Forester did not have a justifiable expectation that his collateral security would return to him after he defaulted on his loans; the trustee and through him the general creditors merely stand in Forester's shoes." 529 F.2d at 315.

The court was not oblivious to the trustee's status under § 70(c), noting:

"It is also true that the Act does not vest the trustee with any better right or title to the bankrupt's property than belonged to the bankrupt at the moment of bankruptcy. (subject to exceptions not applicable here) 4A *Collier on Bankruptcy* 55 (14th Ed.) 1975." 529 F.2d at 316.

There was a dissent in *Forester* which specifically treats of the trustee's status as a judgment creditor under § 70(c); the majority here adopts the reasoning of the dis-

sent which would have allowed the trustee to compel marshaling in favor of the bankrupt estate because of his status as a judgment creditor.

Citation of *Shedoudy v. Beverly Surgical Supply Co.,* 100 Cal.App.3d 730, 161 Cal. Rptr. 164 (1980), deals only with state law. It does not interpret nor affect application of § 544. The ruling of *Forester* deals with Federal bankruptcy law and is not affected nor attenuated by *Shedoudy.*

I would affirm the trial court.